ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, C. Justin Brown, Jr., an attorney licensed to practice law in Louisiana.
FORMAL CHARGES
The ODC filed two sets of formal charges against respondent. The first set of formal charges, consisting of three counts and bearing the disciplinary board’s docket number 01-DB-109, was filed on October 31, 2001. The second set of formal charges, also consisting of three counts, bears the disciplinary board’s docket number 02-DB-023 and was filed on February 25, 2002. The two sets of formal charges were consolidated by order of the *2 hearing committee chair dated May 13, 2002.

01-DB-109

Count I — The Splan Matter
In February 1997, Earl Splan filed a complaint against respondent with the ODC. According to the complaint, Mr. Splan retained respondent in 1995 to perform a title search and sell a piece of immovable property. The parties agreed that respondent’s fee for this work would be $500, of which Mr. Splan paid $100 by check. The parties further agreed that the balance of the fee would be deducted from |2the proceeds of respondent’s sale of Mr. Splan’s collection of Louisiana festival posters. However, according to Mr. Splan, respondent did not complete the title search and did not sell the immovable property, nor would he return telephone calls or answer correspondence concerning the matter. Respondent also did not sell the festival posters because some of them were damaged in a flood at his office caused by a plumbing leak. In May 2001, Mr. Splan notified the ODC that respondent had returned to him 17 of the 21 posters from his collection, but asked for assistance in obtaining compensation for the posters remaining in respondent’s possession.[1]
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third persons), and 3.2 (failure to make reasonable efforts to expedite litigation).
Count II — The Moses Phillips Matter
In August 1997, Moses Phillips filed a complaint against respondent with the ODC. According to the complaint, Mr. Phillips retained respondent in October 1993 to handle a community property partition. Mr. Phillips paid respondent $500 in connection with the representation. Nevertheless, respondent failed to adequately communicate with his client and failed to move the community property matter forward to completion. In April 1996, Mr. Phillips demanded that respondent refund the $500 fee he paid. Respondent agreed to do so, but Mr. Phillips did not receive a refund.
IsThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4, and 3.2.
Count III — The Lewis Matter
In September 1997, Betty Lewis and her son, John Lewis, retained respondent to handle a custody matter involving Mr. Lewis’ daughter. Respondent failed to adequately communicate with his clients and did not file a petition for custody until August 11, 1998. In September 1998, Ms. Lewis filed a complaint against respondent with the ODC, alleging that respondent did not earn his fee and would not communicate with her.
After respondent filed an initial response to the complaint, the ODC requested that he provide copies of all correspondence he sent to his client, a copy of the retainer agreement, and an accounting. Respondent failed to provide the requested documents, necessitating the issuance of a subpoena.
The ODC alleged that respondent’s conduct violated the following provisions of *3 the Rules of Professional Conduct: Rules 1.3, 1.4, 3.2, 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation).

02-DB-023

Count I — The Mary Ann Phillips Matter
In 1994, Mary Ann Phillips retained respondent to handle her bankruptcy. Ms. Phillips paid respondent’s $700 fee, but when he did not file the bankruptcy and would not return her phone calls, she filed a complaint with the ODC. Respondent then refunded $400 to Ms. Phillips, who subsequently withdrew her disciplinary complaint at respondent’s request.
|4In April 1999, Ms. Phillips asked respondent to complete her bankruptcy matter. Respondent requested a $300 fee (in addition to the $300 he had retained from the 1994 representation), which Ms. Phillips paid. Once again, however, Ms. Phillips had difficulty reaching respondent, and the bankruptcy was not filed. In October 2000, one of Ms. Phillips’ creditors began garnishing her wages. In November 2000, respondent agreed to meet Ms. Phillips at federal court so that she could sign the bankruptcy petition before he filed it. Respondent did not appear, nor did he refund the legal fee Ms. Phillips paid. As a result, Ms. Phillips filed a second complaint against respondent with the ODC.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5 (fee arrangements), and 3.2.
Count II — The Tell Matter
In January 2001, Lynda Faye Tell retained respondent to correct her daughter’s criminal sentence so she could be released from prison. Ms. Tell paid respondent $900. Respondent did not get Ms. Tell’s daughter released. In June and July 2001, Ms. Tell and her family members filed complaints against respondent with the ODC, alleging that he would not communicate with Ms. Tell and did not earn his fee. Respondent gave a sworn statement, in which he asserted that he had researched the matter and had talked to the judges but there was nothing that could be done to get Ms. Tell’s daughter released. He also stated that he was very ill from June to August 2001, so he told Ms. Tell that he would refund half of her money if she wanted to hire another attorney. Ms. Tell also gave a sworn statement, in which she indicated that she had hired another attorney who informed her that respondent had not done the research he claimed to have done.
IsThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5, and 3.2.
Count III — Failure to Cooperate
Respondent failed to cooperate with the ODC in its investigation of the Tell matter. When respondent was subpoenaed for a sworn statement he did not bring his file as required. At the end of the statement, respondent said that he would look for the file and forward it to the ODC within a week. Respondent did not do so and also did not respond to the ODC’s follow-up letter regarding same.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.1(c) and 8.4(g).
DISCIPLINARY PROCEEDINGS
Respondent was served with both sets of *4 formal charges,[2] but he failed to answer or otherwise reply. Accordingly, by order dated May 9, 2002, the factual allegations contained in the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). On June 4, 2002, respondent filed a motion to recall the deemed admitted orders and requested ten- days to answer the formal charges. The hearing committee chair granted respondent’s motion on July 12, 2002. When respondent still failed to file any answer, the committee chair reinstated the deemed admitted orders on August 16, 2002. No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue | ñof sanctions. The ODC submitted its evidence on November 12, 2002. Respondent filed nothing for the committee’s consideration.

Hearing Committee Recommendation

On April 10, 2003, the hearing committee issued its report and recommendation, finding that respondent violated the Rules of Professional Conduct as charged in both sets of formal charges. Respondent harmed Mr. Splan, Mr. Moses, Ms. Phillips, and Ms. Tell by not providing ac-countings or refunding fees. On numerous occasions, respondent neglected his clients’ matters to the point of termination and without providing any of the legal services requested. Respondent caused harm to his clients through his lack of diligence. Respondent also harmed his clients and the legal profession by not returning phone calls or responding to correspondence. Based on these findings, the committee determined that respondent knowingly and intentionally violated multiple duties that he owed to his clients and the profession.
The committee found no mitigating factors in this case. However, it did find the following aggravating factors: prior disciplinary offenses,[3] a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution.
17Based on these findings, and considering the ABA’s ’ Standards for Imposing Lawyer Sanctions and the prior jurisprudence, ' the committee recommended that respondent be suspended from the practice of law for a minimum of three years.[4]
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
On December 10, 2003, eight months after the hearing committee issued its rec *5 ommendation and the day before this matter was scheduled to be considered by a panel of the disciplinary board,[5] respondent filed motions to supplement the record with mitigating evidence and with additional responses to the complaints filed against him. The ODC opposed the filing of the supplemental responses because respondent had numerous opportunities to respond previously and had not. The disciplinary board permitted respondent to submit the mitigating evidence,[6] but denied the motion to supplement the record with additional responses to the complaints.

Disciplinm'y Board Recommendation

The disciplinary board agreed that the deemed admitted facts support the conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The board determined respondent’s conduct was knowing, if not intentional. Respondent violated duties owed to his clients and the profession, causing actual injury to his clients by failing to pursue their legal matters, by failing |°to adequately communicate with them, by failing to timely return unearned fees, and by failing to properly safeguard their property. Respondent also harmed the legal profession through his lack of cooperation with the ODC.
The board adopted the aggravating factors found by the hearing committee and also found the mitigating factor of good character or reputation. The board further noted that the harm to Mr. Splan was tempered somewhat by the return of 17 of the 21 posters entrusted to respondent for safekeeping.
Turning to the issue of an appropriate sanction for respondent’s misconduct, the board agreed with the hearing committee’s determination that the applicable baseline sanction is a suspension from the practice of law ranging from six to eighteen months.[7] Moreover, the board agreed *6 with the committee that the aggravating factors justify an upward deviation from the baseline sanction. Nevertheless, “after noting that some mitigating factors are present,” the board opined “that a lesser upward deviation is warranted in this matter.”
Based on this reasoning, the board recommended that respondent be suspended from the practice of law for two years, deferring all but one year and one day, with |aany misconduct occurring during a two-year period following the finality of the court’s order being grounds for making the deferred period of suspension executo-ry. One board member dissented and would adopt the three-year suspension recommended by the hearing committee.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation, but on our own motion, we ordered the parties to submit briefs addressing the issue of an appropriate sanction. The ODC filed a brief in response to the court’s order. However, respondent failed to file a brief.
DISCUSSION
The deemed admitted facts in this case establish that respondent has violated the professional rules as charged in both sets of formal charges. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In the instant case, respondent neglected the legal matters of five clients— Mr. Splan, Mr. Moses Phillips, Ms. Lewis, Ms. Mary Ann Phillips, and Ms. Tell — and failed to communicate with his clients, failed to return unearned legal fees due to Ms. Phillips and Ms. Tell, and failed to cooperate with the ODC in its investigation of the complaints filed by Ms. Lewis and Ms. Tell. Respondent also failed to safeguard Mr. ImSplan’s festival posters, resulting in damage to the posters. This misconduct occurred over a period of approximately eight years, and in each instance, caused actual injury to respondent’s clients. The ODC was then forced to utilize its limited resources to investigate these complaints with little or no cooperation from respondent at any point. In our view, respondent has demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations.
The baseline sanction for respondent’s misconduct is a suspension from the practice of law. The record supports the following aggravating factors: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1988), and indifference to making restitution. In mitigation, the disciplinary board *7 recognized respondent’s good character and reputation, based solely on his tardy submission of six character reference letters. This mitigating factor is weak, at best. No other mitigating factors are supported by the record.
We have imposed a wide range of sanctions in cases involving varying degrees of neglect, failure to communicate, failure to return unearned fees, and failure to cooperate with the ODC in its investigation. However, in cases that involve several clients, we have generally imposed lengthy suspensions from the practice of law, with no portion of the suspension deferred; in some instances, we have imposed disbarment.[8] Based on the facts of this case, we find that the board erred in rejecting the hearing committee’s recommendation of a three-year suspension. The actual | t suspension of one year and one day that has been recommended by the board is far too lenient for respondent’s misconduct, even considering the sole mitigating factor recognized by the board.
Accordingly, we will reject the disciplinary board’s recommendation and impose a three-year suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that C. Justin Brown, Jr., Louisiana Bar Roll number 18816, be and he hereby is suspended from the practice of law for a period of three years. Respondent is ordered to furnish complete ac-countings and full restitution of all unearned legal fees to his clients subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., would suspend respondent for one year and one day.

. Respondent apparently kept four of the damaged posters so he could pursue a lawsuit against his landlord's insurance company.

. The hearing committee also recommended that reinstatement should be conditioned upon respondent’s "making full restitution of all fees paid by the Complainants in this matter and payment of all costs of these disciplinary proceedings.” The committee further recommended one year of monthly "monitoring” following reinstatement based upon its belief that respondent has refused to acknowledge the wrongful nature of his conduct.

. The formal charges in 01-DB-109 were served upon respondent by certified mail received on November 30, 2001; the return receipt card was signed by respondent. The formal charges in 02-DB-023 were personally k served upon respondent by the Orleans Parish l^hvil Sheriff on March 27, 2002.

. (Respondent was admonished by the disciplinary board in July 1995 for failing to act vith reasonable diligence and promptness in irepresenting a client, failing to communicate Fwith a client, and failing to properly supervise I a non-lawyer assistant (95-ADB-064). Respondent was also admonished in October 1996 for failing to cooperate with the ODC in a disciplinary investigation (96-ÁDB-070).

. This matter was originally scheduled to be heard by the board panel on August 28, 2003; however, four separate continuances were granted at the request of respondent through counsel.

. The mitigating evidence consists of six letters (two from judges and four from former clients of respondent’s) generally attesting to respondent’s good character and an August 5, 1999 affidavit from Earl Splan that states respondent returned to him 17 of the 21 posters from his collection.

. Both the hearing committee and the disciplinary board relied on the following cases: In re: Barry, 01-1722 (La.10/26/01), 799 So.2d 479 (six-month suspension with probation and Ethics School imposed for failure to complete post-conviction matter or return retainer fee in a timely fashion; numerous aggravating factors present but no mitigating factors); In re: Bankston, 01-1352 (La.6/29/01), 791 So.2d 1263 (one year and one day suspension imposed for failure to communicate with a client, failure to account for or refund unearned fee, and failure to cooperate with the ODC; numerous aggravating factors present but no mitigating factors); In re: Tumage, 01-1240 (La.6/22/01), 790 So.2d 620 (one year and one day suspension imposed for failure to communicate with a client, neglect of the client’s legal matter, failure to refund advanced costs and return the client’s file, and failure to cooperate with the ODC; numerous aggravating factors present but no mitigating factors); In re: Smith, 00-2627 (La.11/27/00), 775 So.2d 1 (one year and one day suspension imposed for failure to communicate with two clients, neglect of the clients’ legal matters, failure to account for or refund unearned fees and advanced costs, and failure to cooperate with the ODC; numerous aggravating factors present but no mitigating factors); In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87 (one year and one day suspension imposed upon an attorney who failed to communicate with a client and abandoned his law practice; several aggravating factors present and one mitigating factor present); and In re: Trichel, 00-1304 (La.8/31/00), 767 So.2d 694 (in light of the attorney’s prior disciplinary record for similar misconduct, an eighteen-month suspension imposed for failure to communicate with a *6 client, neglect of the client’s legal matter, and failure to properly terminate the client's representation).

. See, e.g., In re: Wharton, 03-1816 (La.10/17/03), 872 So.2d 459 (three-year suspension; seven clients); In re: Watley, 03-0233 (La.9/5/03), 854 So.2d 315 (disbarment; six clients); In re: Turissini, 03-0549 (La.6/6/03), 849 So.2d 491 (three-year suspension; six clients).