*652 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
I,This disciplinary matter arises from three sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Brian P. Brancato, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed three sets of formal charges against respondent. The first set, bearing the disciplinary board’s docket number 03-DB-034, was filed on June 13, 2003 and consists of four counts of misconduct. The second set, bearing the disciplinary board’s docket number 04-DB-073, was filed on August 12, 2004 and consists of four counts of misconduct. The third set, bearing the disciplinary board’s docket number 04-DB-083, was filed on November 3, 2004 and consists of two counts of misconduct.
The first set of formal charges was considered by a hearing committee separately from the second and third sets, which were consolidated by order of the hearing committee chair dated November 18, 2004. On March 9, 2005, all three matters were consolidated by order of the disciplinary board. On January 17, 2006, the board filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

UOS-DB-OSJp

Count I — The YoungfWhitted Matter
In September 1999, Lois Young retained respondent to seek post-conviction relief on behalf of her son, Mark Whitted.[1] Respondent filed an application for post-conviction relief, which the trial court denied. Thereafter, respondent neglected the matter by failing to follow through with an appeal of the trial court’s decision. He also failed to adequately communicate with either Ms. Young or Mr. Whitted about the status of the matter.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct.
Count II — The Knotts Matter
In November 2001, Jason Knotts retained respondent to obtain an expungement of his felony theft conviction. Thereafter, respondent failed to respond to Mr. Knotts’ numerous requests for updates *653 about the status of the matter. In March 2002, respondent finally began working on the matter and learned that an expungement would not be possible; rather, he would need to file a motion to set aside the verdict and a motion for a new trial. Respondent apparently tried to contact Mr. Knotts on one occasion to explain the circumstances but was unable to reach him. Thereafter, he neglected the matter.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.
| zCount III — The Thomas Matter
In January 2001, Antoine Thomas retained respondent to seek post-conviction relief on his behalf. Mr. Thomas provided respondent with his file, but respondent apparently informed his client that he needed $250 to review the case and determine if any meritorious claims existed. Mr. Thomas’ family did not pay respondent the $250 for approximately a year, during which time Mr. Thomas received several adverse judgments. Both before and after the fee was paid, respondent did no work on the case. He also failed to respond to requests for updates about the status of the matter, prompting Mr. Thomas to file a complaint with the ODC.[2]
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.

Count TV— The Stubin/Campbell Matter

In August 2002, Wadra Stubin retained respondent to seek post-conviction relief on behalf of Edward Campbell. Respondent neglected the matter and failed to adequately communicate with Ms. Stubin and Mr. Campbell. In December 2002, Ms. Stubin filed a complaint against respondent with the ODC.[3] Despite receiving notice of the complaint, respondent failed to respond. He also failed to appear to give a sworn statement despite being personally served with a subpoena.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
^Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

After considering the ODC’s submission and the deemed admitted facts, the hearing committee made the following factual findings: .
The Young/Whitted Matter — Ms. Young, the mother of Mr. Whitted, who is legally blind, retained respondent to handle Mr. Whitted’s post-conviction relief. Ms. Young paid respondent either $2,000 or $3,000 of a total $5,000 fee. Ms. Young repeatedly requested status updates from respondent but. received no reply. Respondent admitted to the ODC that he neglected the matter, expressing remorse *654 and a desire to resolve the matter. He also indicated that he had no file materials in this matter because of a fire at his office. Respondent neglected the matter and failed to communicate with his client. However, there is no evidence that respondent caused his client any harm.
The Knotts Matter — Mr. Knotts retained respondent to handle an expungement. Mr. Knotts’ grandmother paid respondent $460 of the $500 fee. Mr. Knotts indicated he called respondent repeatedly between November 2001 and March 2002, but that respondent did not return his calls. Mr. Knotts did speak to respondent on two occasions, at which time respondent told Mr. Knotts he would obtain the [.^expungement within two weeks. Ultimately, Mr. Knotts had another attorney write to respondent to request immediate action or a refund of the $460. Respondent admitted that, due to personal difficulties, he did not begin working on the matter until March 2002. Thereafter, he indicated he discovered difficulties in obtaining the expungement. He also indicated he attempted to bring the difficulties to Mr. Knotts’ attention but was unable to reach him. Thereafter, he allowed the case to languish but expressed remorse and agreed to refund the fee. Respondent neglected the matter and failed to communicate with his client. However, there is no evidence that respondent caused his client any harm.
The Thomas Matter — In January 2001, Mr. Thomas, an Angola inmate, retained respondent for $250 to review his file and determine if post-conviction relief was appropriate. Respondent took no action in the matter. In May 2002, Mr. Thomas requested that respondent return his file so he could pursue post-conviction relief. Respondent did not return the file. Respondent indicated he did not work on the matter for a year because he had not been paid. However, after he was paid, he neglected the matter. He agreed to refund the $250 and return Mr. Thomas’ file. As of January 2003, respondent still had not done so. Respondent’s failure to return Mr. Thomas’ file caused him harm in that he had to seek post-conviction relief pro se and without the benefit of his file materials. Respondent neglected the matter and failed to communicate with his client. He did not express remorse or make restitution.
The Stubin/Campbell Matter — In August 2002, Ms. Stubin entered into a contract with respondent’s law firm to handle Mr. Campbell’s post-conviction relief. Ms. Stubin paid respondent $1,000 of the $3,000 fee. Respondent initially advised Ms. Stubin he would file for post-conviction relief by August 23, 2002. When Ms. Stubin later inquired about the status, respondent indicated he would file for relief by ^September 23, 2002, which was the deadline. Both Ms. Stubin and Mr. Campbell asserted nothing was filed by respondent, which caused Mr. Campbell to lose his chance to seek review of his conviction. Respondent’s conduct caused harm to Mr. Campbell. He neglected Mr. Campbell’s legal matter and failed to communicate with his client. He did not express remorse or make restitution. Respondent also failed to respond to the ODC’s notice of the complaint and failed to appear to give a sworn statement pursuant to a subpoena.
Based on these findings, the committee determined that respondent violated Rules 1.3 and 1.4 “in repetitious and continuing fashion with each client.” Respondent violated duties owed to his clients and as a professional. In his lack of diligence, respondent acted negligently in all four matters. However, in the Thomas matter, he acted intentionally in failing to take action *655 before being paid.[4] His failure to communicate with his four clients was knowing. His failure to cooperate with the ODC was knowing or intentional. His conduct caused harm to Mr. Thomas and Mr. Campbell. The committee determined that the baseline sanction is a period of suspension according to the ABA’s Standards for Imposing Lawyer Sanctions.
In aggravation, the committee found a pattern of misconduct, multiple offenses, and indifference to making restitution.[5] As mitigating factors, the committee found the absence of a prior disciplinary record, absence of a dishonest or selfish motive, and personal or emotional problems.[6]
|7Under these circumstances, the committee recommended that respondent be suspended from the practice of law for one year and one day. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

04-DB-073

Count I — The Brown Matter
In April 2002, Richard Brown retained respondent to obtain the return of an engagement ring, giving him a $500 deposit. Thereafter, respondent neglected the matter and failed to adequately communicate with his client. Mr. Brown attempted to contact respondent on several occasions to obtain a status update, including sending letters, but was unsuccessful. Therefore, Mr. Brown filed a complaint against respondent with the ODC. Despite receiving notice of the complaint, respondent failed to respond. He also failed to appear to give a sworn statement despite being personally served with a subpoena.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count II — The Lingle Matter
Respondent was retained to represent Scott Lingle in a criminal matter. Mr. Lingle’s mother subsequently requested that respondent return her son’s file. Ms. Lingle made several attempts to contact respondent so she could obtain the file, including sending a certified letter, but was unsuccessful. Mr. Lingle eventually filed a complaint against respondent with the ODC, which was referred to the Louisiana State Bar Association’s Practice Assistance Program. In October 2003, respondent informed the practice assistance counsel that he would forward the file to Mr. DLingle’s former attorney. However, he failed to do so, and the matter was referred back to the ODC. Thereafter, respondent failed to cooperate with the ODC in its investigation.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 8.1(c) of the Rules of Professional Conduct.
Count III — The McMullen Matter
In January 2004, Robert McMullen retained respondent to seek post-conviction relief on his behalf. Respondent appeared in court for Mr. McMullen, but the post-conviction relief was denied. Mr. McMullen gave respondent his IRS refund check, with the understanding that respondent would cash the check, retain his fee, and deposit the balance into Mr. McMul- *656 len’s inmate account. Respondent failed to deposit the balance into Mr. McMullen’s account and has not accounted for the funds received.[7] He also failed to respond to requests for information from Mr. McMullen and his family. As such, Mr. McMullen filed a complaint against respondent with the ODC. Despite receiving notice of the complaint, respondent failed to respond.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count IV — The Davis Matter
In January 2002, respondent was appointed to handle Robert Davis’ criminal case. After Mr. Davis pled guilty in March 2002, he tried unsuccessfully to contact respondent to discuss his case, leaving messages and sending letters.
|nThe ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.

0I-DB-083

Count I — The Robinson Matter
In April 2001, Hugh Robinson hired respondent to handle a criminal appeal in federal court, paying him $2,500. Respondent filed for an extension but failed to pay the filing fee. He did not file any other pleadings on Mr. Robinson’s behalf. As such, Mr. Robinson’s appeal was dismissed. Respondent also failed to communicate with his client. In December 2001, Mr. Robinson filed a complaint against respondent with the ODC. Thereafter, respondent signed a promissory note to repay the $2,500, and the matter was referred by the ODC to diversion. However, respondent failed to meet all requirements of the diversion program. Thus, the matter was referred back to the ODC. As of March 2004, respondent still had not repaid the $2,500.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.
Count II — The Smith Matter
In August 2002, Johnell Smith hired respondent to handle his criminal matter, paying him approximately $4,000. The matter was resolved with a plea. Mr. Smith was not satisfied with respondent’s handling of the case and filed a complaint against him with the ODC. Mr. Smith alleged that respondent failed to communicate with him following the plea, neglected the case by failing to file the proper motions, and mishandled the plea, causing him to receive the wrong sentence and no credit for time served. Despite receiving notice of the complaint, respondent failed to respond. He |10also failed to appear to give a sworn statement despite being personally served with a subpoena.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.

0I-DB-073 & Oi-DB-083

Respondent failed to answer or otherwise reply to either set of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

*657
Hearing Committee Recommendation

After considering the ODC’s submission and the deemed admitted facts, the hearing committee made the following factual findings:
The Brown matter — Respondent neglected his client’s legal matter and failed to cooperate with the ODC in its investigation of Mr. Brown’s complaint.
The Lingle matter — Respondent refused to return his client’s file. When a complaint was filed with the ODC, respondent verbally agreed to transfer the file to the client’s new attorney. There is no evidence that the file was transferred, and thereafter, respondent failed to cooperate with the ODC in its investigation.
The McMullen matter — Respondent appeared in court on behalf of his client, but the post-conviction relief was denied. Respondent was advanced legal fees and In was supposed to retain his earned fees, then deposit the balance into his client’s “inmate account.” Respondent did not deposit the balance into his client’s account and did not account for the funds received. He also failed to cooperate with the ODC in its investigation of Mr. McMullen’s complaint.
The Davis matter — Respondent was appointed to assist a client in a criminal matter in January 2002. The client pled guilty in March 2002. Thereafter, despite calling, leaving messages, and sending letters, the client was unsuccessful in trying to contact respondent to discuss his case.
The Robinson matter — Respondent was paid $2,500 to handle a criminal appeal in federal court. Respondent did not communicate with his client and failed to file any pleadings on his client’s behalf other than filing for an extension, which was denied because respondent failed to pay the filing fee. Respondent signed a promissory note to repay the $2,500; however, he still has not paid the money back.
The Smith matter — Respondent was retained in August 2002 and paid $4,000 to represent a client in a criminal matter. The case was resolved with a plea. The client complained that respondent failed to communicate with him after the plea, neglected his case, failed to file the proper pleadings, and mishandled the plea, which resulted in the client not getting the proper sentence or credit for time served. Respondent also failed to cooperate with the ODC in its investigation of Mr. Smith’s complaint.
Based on these findings, the committee determined that respondent engaged in a pattern of misconduct, resulting in repeated violations of the Rules of Professional Conduct. He intentionally violated duties owed to his clients. He also intentionally refused to respond to the ODC’s communications. He has shown no remorse, and his only mitigating factor is an absence of a prior disciplinary record.
ligUnder these circumstances, the committee recommended that respondent be permanently disbarred. The committee also recommended that “if [respondent] can be found, he be ordered to make restitution to the clients he has bilked.”
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

OS-DB-OSk, 01p-DB-073 & Oi-DB-083

After reviewing the consolidated matters, the disciplinary board made the following findings and determinations:
03-DB-OSi — The board adopted the hearing committee’s factual findings and found the ODC proved by clear and convincing evidence that respondent violated *658 Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
0Jp-DB-073 & 0Jp-DB-083 — The board found that the factual allegations of the formal charges were proven by clear and convincing evidence. The board also determined that the committee’s findings of fact indicate respondent violated the Rules of Professional Conduct as charged.
Based on these findings, the board determined that respondent knowingly violated duties owed to his clients and as a professional. His misconduct caused his clients actual harm in that their legal matters have been delayed and their rights of action have been placed in jeopardy. He also caused financial harm to his clients by failing to return unearned fees. Relying upon the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is a period of suspension.
11itThe board adopted the aggravating factors found by the committees and determined that the only mitigating factor present is the absence of a prior disciplinary record.
After reviewing this court’s prior jurisprudence, the board determined that permanent disbarment is too harsh and that a three-year suspension is appropriate for respondent’s substantive misconduct. However, the board considered respondent’s failure to cooperate with the ODC and failure to participate in the disciplinary proceedings to be particularly egregious. These failures, coupled with respondent’s underlying misconduct, show that he lacks respect for his clients, the court, and the legal system.
Accordingly, the board recommended that respondent be disbarred and that he be ordered to make restitution and/or render an accounting to his clients.[8] The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an | uiudependent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does *659 not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The deemed admitted facts in this matter indicate that respondent neglected ten legal matters, failed to communicate with nine clients, and failed to cooperate with the ODC in five investigations. The record supports a finding that respondent violated the Rules of Professional Conduct as alleged in the formal charges.[9] Accordingly, having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of |1sany aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent has knowingly, if not intentionally, violated duties owed to numerous clients and as a professional, causing actual and potential harm. The baseline sanction is a lengthy suspension.
The following aggravating factors are present: a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims,[10] and indifference to making restitution. The only mitigating factor present is the absence of a prior disciplinary record.
Our prior jurisprudence indicates that we have imposed discipline ranging from lengthy suspensions to disbarment for misconduct involving numerous instances of neglect, failure to communicate with clients, and failure to cooperate with the ODC.[11] We agree with the board that the facts of the instant case support a sanction on the upper end of this range. Respon *660 dent accepted the representation of his clients but performed minimal legal work, if any, before completely abandoning the legal matter and his clients. He also failed to communicate with his clients, several of whom were [^incarcerated while respondent represented them. The ODC was then forced to utilize its limited resources to investigate the complaints filed by respondent’s clients with little or no cooperation from respondent. In our view, respondent has demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations.
Accordingly, we will accept the board’s recommendation and disbar respondent. Respondent shall also make restitution as recommended by the board.
DECREE
Upon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that Brian Philip Brancato, Louisiana Bar Roll number 24031, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution to his clients as recommended by the disciplinary board. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. According to Ms. Young’s complaint filed with the ODC, Mr. Whitted is legally blind and had given her power of attorney to act on his behalf.

. While Mr. Thomas complained about respondent’s neglect and failure to communicate, his primary complaint seemed to be respondent's failure to return his file so he could proceed with his post-conviction relief matter. In an October 2002 response to the complaint, respondent indicated he would return Mr. Thomas’ file and refund the $250 fee. However, he failed to do so.

. Mr. Campbell also filed a complaint against respondent in May 2003.

.The committee indicated that it was not suggesting lawyers should be required to provide services without payment. However, it determined that the $250 fee was de minimis and the consequences for respondent's failure to act diligently were severe for the client.

. The committee was particularly concerned with respondent's failure to return Mr. Thomas’ file after reading Mr. Thomas’ numerous pleas for help submitted to the ODC.

. The committee indicated that respondent represented he had personal problems, including a fire at his office.

. According to Mr. McMullen, respondent retained $500 of the $902 refund check as his fee but failed to return the balance.

. The board recommended restitution and/or an accounting be made as follows:
The Young/Whitted matter — accounting and restitution of any unearned fees;
The Knotts matter — restitution in the amount of $460;
The Thomas matter — restitution in the amount of $250;
The Stubin/Campbell matter — restitution in the amount of $1,000;
The Brown matter — restitution in the amount of $500;
The McMullen matter — restitution in the amount of $500;
The Robinson matter — restitution in the amount of $2,500; and
The Smith matter — restitution in the amount of $4,000.

. Although not formally charged, the record also indicates that respondent failed to account for and/or refund unearned fees.

. All but one of the complainants hired respondent to handle their criminal matters. Several were incarcerated while respondent was representing them.

. See In re: Romero, 04-3087 (La.4/29/05), 900 So.2d 819 (three-year suspension for four instances of neglect and failure to communicate with clients, one instance of failing to refund an unearned fee, one instance of conversion less than $2,000, and one instance of failure to cooperate with the ODC); In re: Brown, 04-1119 (La.1/14/05); 892 So.2d 1 (three-year suspension for five instances of neglect and failure to communicate with clients, two instances of failure to refund unearned fees, and two instances of failure to cooperate with the ODC); In re: Wharton, 03-1816 (La. 10/17/03), 872 So.2d 459 (three-year suspension for seven instances of neglect, four instances of failure to communicate with clients, five instances of failure to refund unearned fees, and three instances of failure to cooperate with the ODC); In re: Poirrier, 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94 (disbarment for six instances of neglect and failure to communicate with clients, six instances of failure to refund unearned fees and/or return files, and six instances of failure to cooperate with the ODC); and In re: Gibson, 00-2658 (La. 11/27/00), 773 So.2d 691 (disbarment for seven instances of neglect, failure to communicate with clients, failure to refund unearned fees, and failure to cooperate with the ODC).