*490 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| ,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Thomas Habersham Setze, an attorney licensed to practice law in Louisiana but currently ineligible to practice.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
In August 2002, the ODC filed the first of four sets of formal charges against respondent in 02-DB-076. Respondent answered the formal charges, requesting that they be dismissed because discipline, in the form of an admonition, had already been imposed for the underlying misconduct.[2] In April 2005, a second set of formal charges was filed in 05-DB-047. Respondent answered the formal charges, denying the alleged misconduct. The two matters were then consolidated by order of the hearing committee chair before proceeding to a formal hearing on the merits conducted by the hearing committee in May and June 2006.
12The third set of formal charges, 06-DB-064, was filed in October 2006; and the fourth set of formal charges, 08-DB-044, was filed in May 2008. Respondent failed to answer these two sets of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). Each matter was considered by a separate hearing committee. No formal hearings were held, but the parties were given an opportunity to file with the hearing committees written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for either hearing committee’s consideration.
*491 Thereafter, the four sets of formal charges were consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing all four sets of formal charges.

02-DB-079

Counts I & II-The Dyer Matter

On March 9, 2000, Pamela Dyer hired the Law Offices of Ossie Brown to handle her bankruptcy matter. Respondent, a contract attorney at Ossie Brown, was assigned to represent her. Ms. Dyer paid Ossie Brown $250 on March 9, 2000. Her home was scheduled to be sold at a sheriffs sale on March 22, 2000. Ms. Dyer paid Ossie Brown an additional $250 on April 10, 2000, after the sheriffs sale took place, and respondent did not file her bankruptcy petition until April 12, 2000.[3]
Thereafter, respondent neglected Ms. Dyer’s bankruptcy matter. Specifically, he failed to appear for several meetings of creditors, failed to timely file bankruptcy laschedules, failed to timely pay filing fees, and failed to appear at scheduled court dates.
On June 16, 2000, respondent refunded $450 to Ms. Dyer by providing said funds to attorney Martin Schott, the bankruptcy trustee. On August 9, 2000, United States Bankruptcy Judge Louis Phillips sanctioned respondent by ordering him to pay Ms. Dyer $50 within ten days. However, respondent failed to pay her the $50 as ordered.
Accordingly, Judge Phillips ordered respondent to show cause on September 1, 2000 why he should not be held in contempt of court and further sanctioned. Respondent failed to appear. Respondent again failed to appear on September 22, 2000, and Judge Phillips issued a warrant for his arrest.
On September 29, 2000, respondent voluntarily appeared’ in response to the arrest warrant. At that time, Judge Phillips found him in contempt of court and further sanctioned him as follows: 1) Judge Phillips ordered him to pay an additional $250 to Ms. Dyer by October 2, 2000, and 2) Judge Phillips ordered him to pay $500 to the clerk of court by October 5, 2000. Respondent complied with both orders. Thereafter, he voluntarily agreed to never again practice in bankruptcy court, in lieu of the court instituting formal proceedings to prohibit his future practice in the court.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
|„ 05-DB-047

The Markey Matter

In February 2001, John and Shirley Markey appeared in Baton Rouge City Court regarding a lawsuit filed against them by Sears, Roebuck and Co. based on a disputed credit card balance. Respondent happened to be in the courtroom during the Markeys’ appearance and became acquainted with them. When the Markeys left the courtroom, respondent offered to represent them. Thereafter, *492 the Markeys went to respondent’s law office, where they signed a contingency fee contract to have respondent handle a separate claim against Sears based on the Fair Debt Collection Practices Act.[4]
On June 1, 2001, respondent sued Sears on the Markeys’ behalf in federal court. Soon thereafter, respondent informed the Markeys that Sears offered to settle the dispute for $1,000. The Markeys refused the offer and advised respondent of their desire to go to court.[5]
In September 2001, Sears filed a motion to dismiss, and respondent filed an opposition a month later. In April 2002, the judge ordered the parties to file supplemental briefs addressing whether the Mar-keys’ claim had prescribed. Respondent was granted an extension of time to file his brief but, nonetheless, failed to submit a supplemental brief on the Markeys’ behalf. On September 23, 2002, the judge dismissed the Markeys’ case against Sears based on prescription.
In May 2003, Ms. Markey signed a statement releasing respondent from the representation and acknowledging her responsibility to seek other counsel. | .-Respondent failed to notify the Markeys that their case was dismissed. The Mar-keys only learned of the dismissal on June 10, 2003 when they called the court to inquire if a court date had been set in their case.[6]
In August 2003, the Markeys filed a disciplinary complaint against respondent. Respondent did not fully cooperate with the ODC’s investigation of the complaint, necessitating the issuance of a subpoena to obtain his sworn statement, which he provided in December 2003. During the sworn statement, respondent admitted that he was not competent to handle the Markeys’ legal matter.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3,1.4, 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation).

Formal Hearing

As previously indicated, respondent answered the formal charges in 02-DB-076 and 05-DB-047, and the matters were consolidated before proceeding to a formal hearing on the merits. Respondent appeared at the hearing and was represented by attorney Hilton McManus. The ODC was represented by Deputy Disciplinary Counsel Shana Broussard. Both respondent and the ODC introduced documentary evidence. The ODC called Judge Phillips, Mr. Schott, Ms. Dyer,[7] and Mr. *493 Markey |Kto testify before the committee. Respondent testified on his own behalf and on cross-examination by the ODC, but he called no other witnesses to testify before the committee.
During his testimony, respondent asserted that he never met with Ms. Dyer in March 2000. Instead, he claimed that he first met with her in April 2000. At the April meeting, Ms. Dyer informed him her house had already been sold at a sheriffs sale, and his understanding of the law was that the sale could be rescinded through a bankruptcy proceeding. However, he informed Ms. Dyer “within the first month or so” that the bankruptcy would not stop the sale of her house because it had already occurred. Respondent admitted that he failed to appear for scheduled creditors meetings and court dates, stating that he was busy working on a murder case, which he considered more important than Ms. Dyer’s case, and was not paying attention to his mail. He also admitted that he had never handled a bankruptcy before Ms. Dyer’s. When Judge Phillips ordered him to pay Ms. Dyer, he claimed she would not return his telephone calls, so he was unable to give her the money. He eventually gave the money to the bankruptcy court to give to Ms. Dyer. He disagreed that the only reason Ms. Dyer wanted to file bankruptcy was to stop the foreclosure. In fact, with the assistance of another attorney, he was able to get some of Ms. Dyer’s other debts discharged. Finally, he expressed remorse in taking Ms. Dyer’s case and in missing court dates.
With respect to the Markeys, respondent asserted that he only spoke to Mrs. Markey at the courthouse, who asked him if he was a lawyer and what she should do about their case. They discussed the Mar-keys’ case, and respondent told her to make an appointment at his office if they wanted to discuss it further, which the Markeys did. At that time, he had never handled a claim based on the Fair Debt 17Coliection Practices Act. When them case was dismissed, he claimed that he told the Markeys about the dismissal and that they could appeal it. However, he admitted that he had no documentary evidence to support this claim. He also admitted that he failed to respond in writing to the ODC’s request for information regarding the Markeys’ disciplinary complaint. Finally, he expressed remorse in not getting the Markeys to accept the $1,000 offer and not documenting all the his actions.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee found that respondent presented no evidence to refute the facts alleged in the formal charges. Specifically, the committee made the following factual findings:
In the Dyer matter, the committee found that Ms. Dyer hired respondent to handle her bankruptcy. Respondent failed to provide the bankruptcy court with necessary schedules for Ms. Dyer’s case to proceed. He failed to attend scheduled creditors meetings and failed to appear in response to show cause orders. He also failed to timely pay Ms. Dyer, as ordered by the bankruptcy court. Additionally, he filed the wrong type of bankruptcy petition and failed to inform Ms. Dyer that her house could not be saved through the bankruptcy. Furthermore, he failed to timely obtain assistance from another attorney in handling Ms. Dyer’s bankruptcy case. Respondent’s overall behavior in *494 handling Ms. Dyer’s case, especially ignoring his duties to her due to his involvement in a murder case, and his dealings with the ODC have been prejudicial to the administration of justice.
In the Markey matter, the committee found that respondent failed to make court appearances on the Markeys’ behalf and failed to adequately research unfair debt | Rcollection claims. He also failed to have the Markeys approve the federal lawsuit or provide them with a copy of same. Additionally, he failed to inform them that them case had prescribed. Respondent’s behavior, specifically his lack of communication and becoming angry and hanging up on Mr. Markey, and his dealings with the ODC have been prejudicial to the administration of justice.
Based on these facts, the committee determined that respondent violated Rules 1.3, 1.4, 8.4(c), 8.4(a), and 8.4(d) of the Rules of Professional Conduct in the Dyer matter. With respect to the Markey matter, the committee found that respondent violated Rules 1.1(a), 1.3, 1.4, 8.1(c), 8.4(a), 8.4(d), and 8.4(g).
The committee further determined that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. His conduct ranged from knowing to intentional, causing injury and serious injury to his clients and the legal system. Based on the ABA’s Standards for Imposing Laiwyer Sanctions, the committee determined' that the baseline sanction is suspension.
The committee considered the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency. In mitigation, the committee found the absence of a prior disciplinary record and inexperience in the practice of law (admitted 1998).
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for six months, followed by two years of probation.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

U06-DB-064

Counts I & II — The Allen Matter
In February 2001, David Allen hired respondent to handle his personal injury matter. Thereafter, Mr. Allen was incarcerated, and communication between the two became difficult. Nonetheless, in January 2002, respondent filed a lawsuit on Mr. Allen’s behalf to preserve his claim.
In July 2003, respondent and Mr. Allen reestablished communication, and respondent sent Mr. Allen a letter, advising Mr. Allen to seek any needed medical treatment at the prison and requesting that he complete and return a medical authorization form. Mr. Allen promptly complied and, additionally, requested a status update and copies of all pleadings filed on his behalf. Respondent failed to respond to this and numerous other requests. He did not communicate with Mr. Allen again until after Mr. Allen filed a disciplinary complaint against him in February 2005.
Respondent failed to respond to Mr. Allen’s disciplinary complaint, necessitating the issuance of a subpoena to obtain his sworn statement. Following the sworn statement, respondent failed to respond to a June 2005 supplemental request for information, necessitating the issuance a second subpoena.
The ODC alleged that respondent’s conduct violated the following provisions of *495 the Rules of Professional Conduct: Rules 1.4, 8.1(c), and 8.4(a).

Hearing Committee Report

As previously indicated, respondent failed to file an answer to the formal charges in 06-DB-064, and consequently, the factual allegations contained therein were deemed admitted. After considering the ODC’s deemed admitted submission, |10the hearing committee determined that the factual allegations of the formal charges have been admitted and proven by clear and convincing evidence. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as charged.
The committee further determined that respondent knowingly, if not intentionally, violated duties owed to his client and the legal profession. He displayed a disregard for the welfare of his clients, the legal profession, and the legal system. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is suspension. The committee did not address the subject of aggravating factors but did find a lack of mitigating factors.
After considering this court’s prior jurisprudence involving similar misconduct, the committee recommended that respondent be suspended from the practice of law for six months, fully deferred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

08-DB-0U

Count I — The Stears Matter
Timothy Stears hired respondent to handle his medical malpractice claim. Thereafter, respondent failed to keep Mr. Stears informed of the status of the matter, failed to adequately research the matter, and failed to provide Mr. Stears with adequate representation. Respondent later informed him that the medical review board found no negligence on the part of his treating physician. Mr. Stears advised respondent that he wanted to appeal the decision.
^J^Over the next two years, respondent performed no additional work on the case. Consequently, Mr. Stears requested a copy of his file. Several months later, a representative from Ossie Brown informed Mr. Stears that respondent was no longer employed there. Mr. Stears retrieved his file from Ossie Brown, but many of his documents were missing.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(a) (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of a representation), 3.2 (failure to make reasonable efforts to expedite litigation), and 8.4(a).
Count II — The Norman Matter
In June 2004, Bjoern Norman hired respondent to handle his personal injury matter. After having a related shoulder surgery in June 2006, Mr. Norman forwarded his medical bills to respondent and requested a status update. Respondent failed to respond to Mr. Norman’s numerous letters and messages regarding the status. Eventually, respondent advised Mr. Norman that he had entered into negotiations with the opposing party’s insurer.
In September 2006, a representative from Ossie Brown informed Mr. Stears that respondent was no longer employed there. The representative also informed him that the information in his file revealed respondent had never located the opposing party. The information further indicated that respondent had not started negotiations with the insurer.
*496 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 3.2, 8.4(a), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
_±gCount III — The Anderson Matter
In 2000, Bradley Anderson hired respondent to handle a wrongful death action. In 2006, a representative from Ossie Brown informed Mr. Anderson that respondent was no longer employed there. The representative also informed him that a hearing on a motion for summary judgment was scheduled in his case. Mr. Anderson made several attempts to contact respondent by telephone and mail, to no avail. Consequently, he appeared at the hearing pro se.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.16(d), 3.2, and 8.4(a).
Count IV — The Failure to Cooperate Matter
In September 2006, Mr. Stears, Mr. Norman, and Mr. Anderson all filed disciplinary complaints against respondent. Respondent was personally served with copies of the complaints, and his attorney of record, Hilton McManus, received copies via facsimile. Neither respondent nor Mr. McManus submitted responses to any of the complaints.[8]
The ODC alleged that respondent’s conduct violated Rule 8.1(c) of the Rules of Professional Conduct.

Hearing Committee Report

As previously indicated, respondent failed to file an answer to the formal charges in 08-DB-044, and consequently, the factual allegations contained therein were deemed admitted. After considering the ODC’s deemed admitted submission, | iathe hearing committee determined that the formal charges were deemed admitted and proven by clear and convincing evidence. Based on the deemed admitted facts, the committee determined that respondent violated Rules 1.3, 1.4, 1.15(a), 1.16(d), 3.2, 8.1(c), and 8.4(a) of the Rules of Professional Conduct. The committee did not address whether respondent violated Rule 8.4(c).
The committee further determined that respondent “knowingly and intentionally abandoned his law practice without communicating with his clients and protecting their interests, all to the detriment of the public, the profession, and the legal system.” The committee also determined that “[sjuspension is generally warranted for violations such as those at hand.” The committee did not address the subject of aggravating factors but found the absence of a prior disciplinary record as a mitigating factor.
After considering this court’s prior jurisprudence involving similar misconduct, the committee recommended that respondent be suspended from the practice of law for one year and one day.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplináis Board Recommendation

02-DB-076 & 05-DB-0U7 & 06-DB-06U & 08-DB-0U

After reviewing these consolidated matters, the disciplinary board made the following findings:
With respect to the Dyer and Markey matters, the board found nothing in the *497 record to suggest the hearing committee’s findings of fact are manifestly erroneous. Additionally, the board found that respondent commenced representing Ms. Dyer | |4prior to the sheriffs sale of her house. As such, Ms. Dyer suffered serious injury as a result of respondent’s failure to timely file her bankruptcy petition. Based on these facts, the board found that respondent violated Rules 1.3, 1.4, 3.4(c), 8.4(a), and 8.4(d) of the Rules of Professional Conduct in the Dyer matter. The board also found that respondent violated Rules 1.1(a), 1.3, 1.4, 8.1(c), 8.4(a), and 8.4(g) in the Markey matter. The board did not address whether respondent violated Rule 8.4(d) in the Markey matter.
With respect to the Allen matter, the board found nothing in the record to suggest that the deemed admitted facts as set forth in the formal charges are manifestly erroneous. Based on these facts, the board found that respondent violated Rules 1.4, 8.1(c), and 8.4(a) of the Rules of Professional Conduct.
With respect to the Stears, Norman, Anderson, and failure to cooperate matters, the board found nothing in the record to suggest that the deemed admitted facts as set forth in the formal charges are manifestly erroneous. Based on these facts, the board found that respondent violated Rules 1.3, 1.4, 1.15(a), 1.16(d), 3.2, and 8.4(a) of the Rules of Professional Conduct in the Stears matter. The board found that respondent violated Rules 1.3, 1.4, 1.16(d), 3.2, 8.4(a), and 8.4(c) in the Norman matter. The board found that respondent violated Rules 1.3, 1.4, 1.16(d), and 8.4(a) in the Anderson matter, but he did not violate Rule 3.2 in this matter. Finally, the board found that respondent violated Rule 8.1(c) in the failure to cooperate matter.
The board determined that respondent knowingly violated duties owed to his clients, the legal system, and the legal profession. His conduct caused actual harm to his clients. Ms. Dyer, in particular, suffered serious harm, while Mr. Norman and Mr. Anderson’s claims may have prescribed. Respondent also harmed the legal system and the legal profession. After reviewing the ABA’s Standards for Imposing \ ^Lawyer Sanctions, the board determined that the baseline sanction is “a significant period of suspension.”
The board found the following aggravating factors present: a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and vulnerability of the victim (Ms. Dyer). The board also found the following mitigating factors present: absence of a prior disciplinary record, inexperience in the practice of law (the Dyer matter), delay in the disciplinary proceedings, and imposition of other penalties or sanctions (the Dyer matter).
In determining an appropriate sanction, the board stated,
the record does not contain any evidence that Respondent has been guilty of mishandling client funds. Certainly, he has abdicated his duties to his clients, the legal system, and the profession by abandoning his practice without taking any measures to protect the interests of his clients. Nevertheless, the jurisprudence of the Court indicates that a lengthy suspension and not disbarment is the appropriate sanction in this matter.
After considering all the factors present in this consolidated matter, the board recommended that respondent be suspended from the practice of law for three years.
*498 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and [ ^recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this consolidated matter reveals that respondent failed to provide competent representation to his clients, neglected several legal matters, failed to communicate with several clients, abandoned his law practice without protecting his clients’ interests, disobeyed court orders, engaged in conduct prejudicial to the administration of justice, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failed to cooperate with the ODC in numerous investigations. Respondent has violated the Rules of Professional Conduct as alleged in the formal charges, with one exception. As found by the board, the record does not support a finding that respondent violated Rule 3.2 in the Anderson matter.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana Stale Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports .a finding that respondent acted knowingly and, in some instances, intentionally. He violated duties owed to his clients, the legal system, and the legal profession, causing actual harm. Based on the ABA’s Standards for 11 -¡Imposing Lawyer Sanctions, the baseline sanction is in the range of a lengthy suspension to disbarment.
In addition to the aggravating factors found by the board, we find the aggravating factor of refusal to acknowledge the wrongful nature of the conduct is also present. We further agree with the board’s analysis of the factors in mitigation.
Turning to the issue of an appropriate sanction, the misconduct in this matter is similar to the misconduct that occurred in In re: Brown, 04-1119 (La.1/14/05), 892 So.2d 1. In Brown, the attorney neglected the legal matters of five clients, failed to communicate with clients, failed to return unearned legal fees owed to two clients, failed to safeguard one client’s property, and failed to cooperate with the ODC, causing actual injury to his clients. We found that the attorney “demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations” and imposed a three-year suspension. A similar sanction is warranted in the instant matter. However, given that respondent has no prior *499 discipline and has paid the sanctions imposed by Judge Phillips in the Dyer matter, an upward deviation to disbarment is unnecessary.
Accordingly, we will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for three years.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Thomas Habers-ham Setze, Louisiana Bar Roll number 25498, be and he hereby is suspended from the practice of law for three years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, Lswith legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. Respondent has been ineligible to practice law since July 24, 2008 for failing to comply with mandatory continuing legal education requirements. He has also been ineligible since October 2, 2008 for failing to file his trust account statement. Additionally, he has been ineligible since September 9, 2009 for failing to pay his bar dues and the disciplin-aiy assessment.

. The adjudicative committee of the disciplinary board did not approve the admonition. However, the ODC failed to informed respondent of the adjudicative committee’s decision prior to filing formal charges against him.

. Respondent Bled a Chapter 7 bankruptcy petitioner instead of a Chapter 13 bankruptcy petition, which could have been utilized to restructure her house note since she had a job.

. The Markeys did not hire respondent to defend them in Sears' lawsuit against them. Nonetheless, on July 27, 2001, respondent filed, an answer and reconventional demand in the case on their behalf.

. At the formal hearing of this matter, Mr. Markey testified that, after he refused the settlement offer, respondent got angry and hung up on him. He also indicated that was the last time he heard from respondent.

. Mr. Markey testified that the court clerk’s office informed him the case was dismissed because respondent never followed through with the paperwork.

.Ms. Dyer testified that she first met with respondent on March 9, 2000 at Ossie Brown. She explained to respondent that she needed a bankruptcy attorney to stop the foreclosure on her house. Respondent agreed to handle the matter and assured her he could save her house, but he filed the bankruptcy petitioner after her house had already been sold at a sheriff's sale. Thereafter, he failed to appear at court appearances on her behalf and failed to file the bankruptcy schedules. She eventually received a discharge in bankruptcy but *493 was not able to save her house. She also eventually received a full refund of the fees she paid to Ossie Brown,

. In September 2009, Mr. McManus filed a motion to withdraw as respondent's attorney of record due to respondent's failure to communicate with him. The disciplinary board granted the motion on September 23, 2009.