ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.*
| ¶ This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, James A. Norris, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to our order in In re: Norris, 99-0768 (La.5/7/99), 733 So.2d 610.
UNDERLYING FACTS
In 1989, respondent was the district attorney for Ouachita and Morehouse Parishes and was also a partner in the West Monroe law firm of Norris, Johnson & Placke. In June 1989, without prior notification to his partners, respondent withdrew $525,977.81 of the partnership’s funds on deposit at various banking institutions. He used some of the funds to pay off loans to the partnership and kept the remaining funds as his asserted one-third share of the partnership. In August 1989, the law firm (hereinafter referred to as “J & P”) filed suit against respondent in the Fourth Judicial District Court, Parish of Ouachita, seeking an accounting, restoration of the disbursed funds, and damages.
In January 1994, while the litigation was still ongoing, respondent began to borrow heavily from his relatives and a local bank; in exchange, he granted mortgages on virtually all of his known assets, which had previously been | ¡.unencumbered. Respondent deposited the loan proceeds into his personal checking account. In February 1994, respondent withdrew from the account the sum of $500,000, all in $100 bills, and placed the cash in a bank safety deposit box. On September 30, 1994, the trial court issued written reasons for judgment awarding more than $800,000 to J & P for respondent’s conversion of partnership funds.[1]
Thereafter, J & P began efforts to collect the judgment in its favor. During judgment debtor proceedings in December 1994, respondent testified under oath that after the trial court rendered its reasons for judgment, he removed the $500,000 in cash from his safety deposit box and “spent” all of it. When asked what the money was spent on, respondent testified that he could “go back and look at records” to detail “exactly what I’ve done with what monies.” No such records were ever produced.
In January 1995, J & P initiated an involuntary bankruptcy proceeding against respondent. On four occasions during that proceeding, respondent testified under *1223 oath that he had burned the $500,000 he withdrew from the bank safety deposit box. Specifically, respondent testified that the day after he learned of the state court judgment against him, he went to the bank and removed the currency from the safety deposit box, placed it in his briefcase, and took it home, where he doused the $100 bills with gasoline and burned them in a metal trash barrel in his back yard. Respondent also explained that he had used the term “spent” during the judgment debtor examination in an attempt to convey that the $500,000 in currency was “gone” or “burned.” The bankruptcy court rejected respondent’s testimony as a fabrication and ordered respondent to turn over the cash to the' bankruptcy trustee.
^Respondent failed or refused to comply with the turnover order, and as a result, the bankruptcy court recommended that he be held in contempt. On January 31, 1996, the district court adopted the bankruptcy court’s recommendation, adjudged respondent in civil contempt of court, and ordered that he be incarcerated until he produced the funds.[2] Respondent appealed the contempt order to the United States Fifth Circuit Court of Appeals, which affirmed in an unpublished per cu-riam opinion.
In February 1997, a federal grand jury returned an indictment charging respondent with four felony counts of making false declarations under oath, in violation of 18 U.S.C. § 1623. Each count related to an instance during the bankruptcy proceeding in which respondent testified under oath that he had burned $500,000 in cash. Following a jury trial, respondent was unanimously convicted on all four perjury counts. In June 1999, respondent was sentenced to serve 33 months in prison, followed by three years of supervised release. The United States Fifth Circuit Court of Appeals subsequently affirmed respondent’s conviction and sentence. United States v. Norris, 217 F.3d 262 (5th Cir.2000).
DISCIPLINARY PROCEEDINGS
On March 29, 1996, the ODC filed one count of formal charges against respondent, alleging that his conduct violated Rules 3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal), 3.3(a)(4) (a lawyer shall not offer evidence known to be false), 3.4(b) (a lawyer shall not falsify evidence), 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) U(engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.[3] Respondent answered the formal charges and denied any misconduct.
Following respondent’s perjury conviction, the ODC supplemented and amended the formal charges to allege respondent’s commission of a criminal act, in violation of Rule 8.4(b) of the Rules of Professional *1224 Conduct. Respondent answered the amended formal charges and acknowledged his conviction, and pursuant to Supreme Court Rule XIX, § 19, he requested that the disciplinary proceeding be stayed until such time as all appeals from his conviction had been concluded. After respondent’s conviction became final, he requested a further continuance of the disciplinary proceeding until he was released from the federal penitentiary. This request was granted by the hearing committee chair over the ODC’s objection.
On May 14, 2002, the ODC filed a “Notice of Intent to Seek Permanent Disbarment.” In that notice, the ODC asserted that permanent disbarment is appropriate in this case, considering that respondent’s misconduct involves serious conversion of funds, fraud, and perjury.

Hearing Committee Recommendation

This matter finally proceeded to a formal hearing after respondent was released from federal prison in December 2002. Considering the evidence and testimony presented at the hearing, and finding there is no dispute as to the civil contempt order and respondent’s criminal conviction for perjury, the hearing committee concluded | ¿that respondent violated Rules 3.3(a)(1), 3.3(a)(4), 3.4(b), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The committee determined that respondent violated a duty owed to the legal system, a factor which it acknowledged weighs heavily in favor of permanent disbarment. The committee further determined that respondent’s conduct caused harm or potential harm to others. His failure to truthfully testify to both the bankruptcy court and in civil proceedings caused economic hardship to his former law partners “through the delay of proceedings and inability to have a money judgment satisfied.” Moreover, the crime of perjury causes potential injury to the entire legal profession, particularly when committed by attorneys who are sworn to uphold the law and who are officers of the court. As to respondent’s mental state at the time of the offense, the committee observed that respondent’s behavior was “bizarre” but noted that he offered no medical evidence to suggest that an impaired mental state caused him to lie under oath. The committee determined that the baseline sanction for respondent’s conduct is disbarment.
As aggravating factors, the committee recognized respondent’s dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1970), and indifference to making restitution. In mitigation, the committee acknowledged the absence of a prior disciplinary record, personal and emotional problems (the personal and emotional problems in question were not specified but the committee found these “resulted in the underlying conduct”), a cooperative attitude toward the proceedings, good character and reputation, and the imposition of other penalties or sanctions.
Finding great weight should be applied to the mitigating factors, particularly the “punishment already received by the respondent” in connection with his criminal | ^conviction, the committee recommended that respondent be suspended from the practice of law for three years. Two members of the committee recommended that the suspension be applied prospectively from the effective date of the court’s order imposing discipline, while the third member recommended that the suspension be applied retroactively to the date of respondent’s interim suspension.
Both respondent and the ODC filed objections to the hearing committee’s recommendation. The ODC objected to the leniency of the sanction recommended by the committee, urging that permanent dis *1225 barment is appropriate. In his objection, respondent asserted that the three-year suspension recommended by the committee should commence as of the date of his interim suspension, not on the effective date of the final order of discipline.

Disciplinary Board Recommendation

After reviewing the record of this matter, the disciplinary board accepted the hearing committee’s factual findings and determined that respondent violated Rules 3.3(a)(1), 3.3(a)(4), 3.4(b), 3.4(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The board found that respondent violated duties owed to the public, the legal system, and as a professional. As the committee noted, an attorney who commits the crime of perjury causes injury not only to the public but also to the entire profession and to the judicial system. The board also agreed with the committee that disbarment is the baseline sanction for respondent’s misconduct.
The board adopted the aggravating and mitigating factors found by the committee, with the exception of the mitigating factor of personal and emotional problems, which the board determined does not apply in this ease. The board acknowledged that the record contains evidence that respondent suffered personal |7problems subsequent to the misconduct, such as the break-up of his marriage, but noted that there is no evidence that any personal problems caused or contributed to the misconduct. Therefore, the board rejected this factor.
Under the circumstances of this case, the board gave more weight to the aggravating factors than did the hearing committee. The board found that respondent has not in any way been rehabilitated by the significant term of imprisonment which he served as a result of the contempt order and the perjury conviction. Respondent has absolutely refused to acknowledge the wrongfulness of his misconduct, utterly lacks remorse, and is completely unwilling to make restitution. Respondent clearly perjured himself in the bankruptcy proceedings in order to avoid making restitution to his former law partners, as ordered under the terms of a civil judgment. He has shown no remorse for these acts.
Considering the substantial aggravating factors present, the board found that a downward deviation from the baseline sanction of disbarment is not warranted. Further, because respondent’s conduct falls squarely under Guideline 2 (intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury) of the permanent disbarment guidelines, the board turned to a discussion of the sanction of permanent disbarment.
The board noted that in the past, this court has not hesitated to permanently disbar lawyers who have engaged in criminal conduct, particularly when the conduct involved the corruption of the judicial process. See, e.g., In re: Laudumiey & Mann, 03-0234 (La.6/27/03), 849 So.2d 515 (conviction of obstruction of justice in connection with the lawyers’ knowing and intentional attempts to influence the testimony of two grand jury witnesses); In re: Pinkston, 02-3251, 02-3252 (La.5/20/03), 852 So.2d 966 (lawyer deliberately misrepresented facts to the court in an ^effort to obtain a more lenient sentence for his client); In re: Harris, 03-0212 (La.5/9/03), 847 So.2d 1185 (lawyer manufactured evidence and presented perjured testimony in a disciplinary matter); and In re: Lynch, 02-2275 (La.1/24/03), 840 So.2d 508 (conviction of subornation of perjury and conspiracy to obstruct justice in connection with a child pornography investigation). Likewise, respondent’s perjury conviction demonstrates that he lacks the moral fitness to retain a license to practice law. *1226 Furthermore, his steadfast refusal to acknowledge the wrongfulness of his conduct leads to the inescapable conclusion that he should be permanently disbarred.
Based on this reasoning, the board recommended respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990).
In the instant case, respondent stands convicted of four counts of perjury. This crime is a felony under federal law and clearly warrants serious discipline. Therefore, | sthe only remaining issue is the appropriate sanction for respondent’s misconduct. The resolution of that issue depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
Respondent does not dispute that the applicable baseline sanction for his misconduct is disbarment under both the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence. Nevertheless, respondent argues that the mitigating factors present justify a substantial downward deviation from disbarment to a three-year suspension. We recognize that several mitigating factors are supported by the record, including the absence of prior disciplinary offenses, respondent’s prior good character and reputation, and the imposition of other penalties or sanctions in the criminal case.[4] Nevertheless, these mitigating factors pale in comparison to the aggravating factors present, particularly respondent’s indifference to making restitution and his unwillingness to acknowledge that his conduct was in any way wrong. We also note respondent’s dishonest or selfish motive, the pattern of misconduct, the multiple offenses, and his substantial experience in the practice of law. Considering all these circumstances, we find no justification for imposing any sanction less than disbarment.
In contrast to respondent’s argument that a substantial downward deviation from the baseline is warranted in this case, the ODC contends that respondent’s conduct is so egregious that permanent disbarment should be imposed. The disciplinary board agreed, finding that Guideline 2 of the permanent disbarment | mguidelines (intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury) is applicable.
Respondent committed perjury on four separate occasions in an effort to avoid *1227 satisfying a civil judgment owed to his former law partners. His conduct reflects nothing less than a willful attempt to subvert the judicial process to his own ends. We cannot and will not condone conduct by an attorney that is so plainly calculated to frustrate the administration of justice.
We are convinced that respondent lacks the good moral character and moral fitness necessary to practice law in this state. In the face of such indisputable evidence of a fundamental lack of moral fitness, we can conceive of no circumstance under which we would grant readmission to respondent. Accordingly, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of James A. Norris, Jr., Louisiana Bar Roll number 2206, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert J. Klees, assigned as Justice ad hoc, sitting for Associate Justice Chet D. Traylor, recused.

. The trial court’s judgment was subsequently affirmed on appeal in an unpublished decision. Johnson & Placke v. Norris, 27,476 (La.App. 2nd Cir.11/8/95), 665 So.2d 183, writ denied, 95-2856 (La.2/2/96), 666 So.2d 1098.

. Respondent was incarcerated from March 7, 1996 until March 19, 1997 in connection with the civil contempt. Every month during his incarceration, respondent was brought before the bankruptcy court and asked to reveal the location of the cash and thereby lift the contempt order. On each occasion, respondent maintained that he had burned the money. Respondent remained imprisoned until the date of his arraignment for the perjury offenses discussed infra.

. The formal charges filed in 1996 also alleged that respondent violated Rule 3.4(a) (a lawyer shall not unlawfully destroy a document or other material having potential evi-dentiary value) of the Rules of Professional Conduct; however, this charge was withdrawn by the ODC during the formal hearing.

. The disciplinary board correctly rejected the mitigating factor of personal and emotional problems. Respondent's personal problems — including the break-up of his marriage in 1998 and the death of his mother in 1999— all arose years after the misconduct at issue in this case. There is absolutely no evidence that any personal or emotional problem caused or contributed to respondent's misconduct.