*46 |,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Claud E. Phelps, Jr., an attorney licensed to practice law in Louisiana but currently suspended.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1992. His first contact with the disciplinary system occurred in 1999, when he was admonished for neglect, failure to communicate with a client, failure to cooperate with the ODC in its investigation, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
In 2002, respondent filed a petition for consent discipline, in which he admitted to numerous instances of neglect, failure to expedite litigation, and failure to communicate with clients. We accepted the petition and suspended respondent from the practice of law for a period of one year and one day, but fully deferred the suspension subject to a twenty-four month period of supervised probation. In re: Phelps, 02—1837 (La.9/30/02), 827 So.2d 1140.
In 2003, we determined respondent violated the conditions of his probation due to his failure to cooperate with his probation monitor. Accordingly, we made the | ⅞previously deferred one-year-and-one-day suspension executory. In re: Phelps, OS-2778 (La.11/14/03), 860 So.2d 531. Respondent has not sought reinstatement from this suspension. Accordingly, he remains suspended from the practice of law.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent, consisting of a total of twenty-seven counts of misconduct. The two sets of formal charges were considered by separate hearing committees but considered jointly by the disciplinary board,[1] which then filed in this court a single recommendation of discipline encompassing both sets of formal charges.

03-DB-055

Count I — The Downey Matter
In August 2001, Thomas Downey hired respondent to assist him in obtaining a Louisiana driver’s license and to handle a child support matter. He paid respondent $750. Respondent neglected the matters, failed to complete the work, and failed to communicate with Mr. Downey. In November 2001, Mr. Downey terminated respondent’s representation and requested an accounting and a full refund. However, respondent would not participate in the *47 Louisiana State Bar Association’s fee arbitration program.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct.
| 3Count II — The Gregory Matter
Terry Gregory hired respondent to handle a child custody matter. Respondent failed to adequately communicate with Mr. Gregory regarding the status of his case. Respondent also informed Mr. Gregory that a court hearing had been continued when it had not. Consequently, respondent failed to appear at the hearing, and Mr. Gregory was forced to represent himself. Respondent also failed to fully cooperate with the ODC in its investigation of Mr. Gregory’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3,1.4, and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Count III — The Lowe Matter
In February 2002, Chad Lowe hired respondent to handle a child custody matter. Respondent failed to adequately communicate with Mr. Lowe regarding the status of his case. Respondent also neglected the matter. In May 2002, Mr. Lowe terminated respondent’s representation before respondent completed the matter. Respondent also failed to fully cooperate with the ODC in its investigation of Mr. Lowe’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(e) of the Rules of Professional Conduct.
Count IV — The Wells Matter
In August 2001, Walter Wells hired respondent to handle a child support matter. Mr. Wells paid respondent $500. However, respondent did no work on the Lmatter. He also failed to communicate with Mr. Wells. Furthermore, respondent failed to cooperate with the ODC in its investigation of Mr. Wells’ complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count V — The Perez Matter
In September 2001, Omar and Angie Perez hired respondent to handle a child visitation matter. They paid him $1,350. Thereafter, respondent neglected the matter. He also failed to communicate with his clients. In June 2002, the Perezes terminated respondent’s representation and requested a full refund. The Perezes had to hire another attorney to handle the matter, paying an additional $750.
Respondent subsequently informed the ODC that he forwarded an accounting and a $93 refund to the Perezes. However, the Perezes indicated they never received an accounting nor a refund, and respondent was unable to provide copies of the accounting or refund check. He also failed to fully cooperate with the ODC in its investigation of the Perezes’ complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count VI — The Foster Matter
In May 2002, Stephen Foster hired respondent to handle a child visitation matter. Mr. Foster paid respondent $750 to prepare the appropriate pleadings, with the agreement that Mr. Foster would pay the balance of the fee after the pleadings were ready. While respondent prepared the pleadings, he failed to move the matter forward because he failed to inform Mr. Foster the pleadings were ready for his | ¿review and filing. A few weeks later, after not receiving a follow-up call from *48 respondent, Mr. Foster informed respondent’s secretary that he no longer wanted respondent to represent him and wanted a refund of the $750 fee. Respondent failed to respond to this message. Therefore, Mr. Foster sent respondent, a termination letter. In response, respondent instructed Mr. Foster to contact his office to sign the pleadings. Subsequently, an adverse judgment was rendered against Mr. Foster.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.
Count VII — The Thomas Matter
In April 2002, Benjamin Thomas hired respondent to handle a child custody matter. Mr. Thomas paid respondent $750 to prepare the appropriate pleadings. Mr. Thomas reviewed the pleadings and made corrections. Thereafter, respondent neglected the matter and failed to communicate with Mr. Thomas.
In July 2002, Mr. Thomas terminated respondent’s representation and requested a refund. Respondent did not respond to this request. However, he informed the ODC that he did not have a calendar system to ensure matters were handled in a timely manner.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.
Count VIII — The Jordan Matter
In April 2001, Troy Jordan hired respondent to handle a community property matter and to help Mr. Jordan with his credit issues. Mr. Jordan paid respondent a | Rtotal of $4,705 to handle both matters. Thereafter, respondent neglected the matters and failed to communicate with Mr. Jordan.
In July 2002, Mr. Jordan terminated respondent’s representation and requested an accounting and a full refund. Respondent failed to render an accounting or refund the fee. He also failed to cooperate with the ODC in its investigation of Mr. Jordan’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5 (fee arrangements) and 8.1(c) of the Rules of Professional Conduct.
Count IX — The Cox Matter
In April 2002, John Cox hired respondent to handle a child support matter. Mr. Cox gave respondent’s secretary $500 for the fee. Thereafter, respondent neglected the matter and failed to adequately communicate with Mr. Cox. He also denied receiving the $500 and indicated his secretary never told him about Mr. Cox’s legal matter. Nonetheless, in September 2002, respondent informed Mr. Cox he would refund the $500 and assist him in the matter free of charge. Thereafter, respondent failed to return Mr. Cox’s telephone calls and did not refund the money.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.
Count X — The Menard Matter
Respondent represented Kevin Menard in a child visitation matter. Respondent failed to inform his client of court-ordered mediation. Neither he nor Mr. Menard were present at the -mediation scheduled for November 21, 2002. Opposing counsel called respondent on numerous occasions regarding the mediation, but he failed to 17answer his phone and did not have an answering service. Respondent also failed to respond to the complaint filed by opposing counsel.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count XI — The Nelson Matter
In July 2002, Sydney Nelson hired respondent to represent him in a domestic *49 matter involving several issues. Mr. Nelson paid respondent a $2,200 deposit. Thereafter, respondent failed to communicate with Mr. Nelson and failed to provide Mr. Nelson with copies of the pleadings he filed. He also failed to prepare for a court hearing and failed to inform his client of opposing counsel’s discovery requests.
In December 2002, Mr. Nelson terminated respondent’s representation and requested a full refund. Respondent refused to participate in the Louisiana State Bar Association’s fee arbitration program. Respondent also failed to cooperate with the ODC in its investigation of Mr. Nelson’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count XII — The Talazac Matter
In August 2002, Michael Talazac hired respondent to represent him in a domestic matter. He paid respondent $3,000. Thereafter, respondent failed to appear at a mediation hearing and failed to communicate with Mr. Talazac.
In November 2002, Mr. Talazac terminated respondent’s representation and requested an accounting, a full refund, and return of his file. When respondent failed to do so, Mr. Talazac filed suit against him. In the civil litigation, respondent failed |sto appear in open court to provide a deposition. Respondent also failed to cooperate with the ODC in its investigation of Mr. Talazac’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 8.1(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count XIII — The Miley Matter
In November 2001, Britt Miley hired respondent to represent him in divorce proceedings. Mr. Miley paid respondent $900. Respondent did not complete the matter and failed to communicate with Mr. Miley. Respondent filed a motion to withdraw as counsel. As a result, Mr. Miley was left unrepresented at a hearing, at which time the court rendered an adverse judgment against him. Respondent did not provide an accounting or refund any of the $900 fee. He also failed to cooperate with the ODC in its investigation of Mr. Miley’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count XIV — The Annina Matter
In 2000, Clint Annina hired respondent to represent him in divorce proceedings and related matters. Mr. Annina paid respondent $1,390. Respondent neglected the divorce matter and failed to communicate with Mr. Annina. The divorce proceedings led to Mr. Annina being sued by his father-in-law. Although respondent agreed to represent Mr. Annina in this suit, he failed to answer the suit. A default judgment in the amount of $1,150 plus interest was rendered against Mr. Annina, and his wages were garnished. Furthermore, Mr. Annina had to pay an additional $165 to another |9attorney to complete the divorce. Respondent also failed to cooperate with the ODC in its investigation of this matter.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.

Count XV— The DeGruy Matter

In January 2002, Michael DeGruy hired respondent to handle a child visitation matter. He paid respondent $1,500 and loaned him a book and CD about fathers’ rights. Thereafter, respondent neglected the matter and failed to communicate with Mr. DeGruy.
*50 In June 2002, Mr. DeGruy terminated respondent’s representation and requested a full refund, return of his file, and return óf his book and CD. Respondent failed to respond to this request. He also failed to cooperate with the ODC in its investigation of Mr. DeGruy’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, and 8.1(c) of the Rules of Professional Conduct.
Count XVI — The Penton Matter
In July 2001, Terry Penton hired respondent to represent him in divorce proceedings. Mr. Penton paid respondent $1,500. Thereafter, respondent failed to provide Mr. Penton with a copy of the pleadings he purportedly filed with the court. Mr. Penton searched the court records, but found no evidence of any filings by respondent.
Ms. Penton then requested an account and refund of any unearned fees. Respondent failed to provide an accounting, nor did he refund any portion of the fee |inpaid by Ms. Penton. Additionally, he failed to cooperate with the ODC during its investigation of Mr. Penton’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, and 8.1(c) of the Rules of Professional Conduct.
Count XVII — The Goletz Matter
In September 2001, Andrew Goletz hired respondent to handle a child visitation matter. He paid respondent $2,300. Thereafter, respondent neglected the matter.
The ODC alleged that respondent’s conduct violated Rule 1.3 of the Rules of Professional Conduct.
Count XVIII — The Yargo Matter
In December 2002, Joseph Yargo hired respondent to handle a custody matter. Mr. Yargo paid respondent $1,500. Thereafter, respondent neglécted the matter. He failed to include a provision in the custody agreement to allow Mr. Yargo’s mother to have visitation with his daughter in his place in the event he were called to active military duty. Although he indicated he would correct the judgment, respondent failed to do so. He also failed to communicate with Mr. Yargo.
The ODC alleged that respondent’s conduct violated Rules 1.3 and 1.4 of the Rules of Professional Conduct.

Formal Charges

After investigation, the ODC filed formal charges against respondent. Respondent failed to answer or otherwise reply to the formal charges. Accordingly, |nthe factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).
Thereafter, respondent requested that the deemed admitted order be recalled and he be allowed to answer the formal charges. The hearing committee chair granted this request. However, respondent again failed to file a timely answer to the formal charges, and the allegations were again deemed admitted.
For a second time, respondent requested that the deemed admitted order be recalled and/or he be allowed to be heard in mitigation. The hearing committee chair denied the motion to recall the deemed admitted order but granted the motion for a mitigation hearing. The parties were given.an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration and also failed to appear at the mitigation hearing.[2]

*51
Hearing Committee Recommendation

After considering the testimony presented at the hearing, the ODC’s submission, and the deemed admitted facts, the hearing committee found that the factual allegations as summarized in each count above were proven by clear and convincing evidence. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee further determined that respondent violated duties owed to his clients, the public, and to the legal profession. The committee concluded he acted knowingly and caused harm to his clients in the form of delay, frustration, adverse or 112default judgments, and deprivation of funds by failing to refund unearned fees. It noted he accepted a total of at least $23,000 in fees from his clients, yet had not returned any fees to any of his clients or provided them with accountings. The committee also found he failed to take seriously the requests for information and subpoenas issued by the ODC. Relying upon the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that disbarment is the baseline sanction.
In aggravation, the committee recognized respondent’s prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, and indifference to making restitution. The committee found no mitigating factors to be present.
Considering respondent’s history of similar misconduct, his clear pattern of misconduct, his apparent disregard for his duty to comply with disciplinary inquiries, the lack of mitigating factors, and this court’s prior jurisprudence, the committee recommended that respondent be disbarred. The committee further recommended that respondent provide account-ings to all of his clients, provide the appropriate restitution, and be charged with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

05-DB-015

Count I — The Scazzafavo Matter
In September 2001, John Scazzafavo hired respondent to represent him in his community property settlement. Mr. Scazzafavo paid respondent $1,575. Thereafter, respondent neglected the matter and failed to communicate with Mr. Scazzafavo. | ^Respondent also failed to cooperate with the ODC in its investigation of Mr. Scazzafavo’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count II — The Distefano Matter
In August 2001, James Distefano hired respondent to represent him in divorce proceedings and a child custody matter. Mr. Distefano paid respondent approximately $2,500. Thereafter, respondent neglected the matters and failed to communicate with Mr. Distefano. Respondent did not complete the divorce, and Mr. Distefano had to hire new counsel. Respondent also failed to cooperate with the ODC in its investigation of Mr. Distefano’s complaint.
*52 The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count III — The Junker Matter
In 1999, Annette Junker hired respondent to represent her in divorce proceedings and a child custody/support matter. Thereafter, respondent neglected the matters and failed to communicate with Ms. Junker. Respondent also failed to cooperate with the ODC in its investigation of Ms. Junker’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count IV — The Langhauser Matter
|uIn January 2002, Michael Langhauser hired respondent to represent him in divorce proceedings and related matters. Mr. Langhauser paid respondent $4,250. Thereafter, respondent neglected the matters and failed to communicate with Mr. Langhauser. Respondent also failed to cooperate with the ODC in its investigation of Mr. Langhauser’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count V — The Fuller Matter
In June 2003, Derek Fuller hired respondent to represent him in a child support matter. Mr. Fuller paid respondent $900. Thereafter, respondent neglected the matter and failed to communicate with Mr. Fuller. Respondent also failed to appear at two hearings on Mr. Fuller’s behalf and failed to notify his client of the hearings. Consequently, an adverse ruling was entered against Mr. Fuller. Respondent also failed to cooperate with the ODC in its investigation of Mr. Fuller’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count VI — The Boe Matter
In November 1999, Rose Boe hired respondent to represent her in divorce proceedings and a child custody/support matter. Respondent neglected the matters and failed to communicate with Ms. Boe. Respondent also failed to cooperate with the ODC in its investigation of Ms. Boe’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
| KCount VII — The Coon Matter
In April 2003, Jeffery Coon hired respondent to represent him in divorce proceedings and related matters. Mr. Coon paid respondent $1,200. Thereafter, respondent neglected the matter and failed to communicate with Mr. Coon. Respondent also failed to cooperate with the ODC in its investigation of Mr. Coon’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count VIII — The Etheridge Matter
In February 2003, Michael Etheridge hired respondent to handle a child support matter and a false imprisonment claim. Thereafter, respondent neglected the matters and failed to communicate with Mr. Etheridge. Respondent also failed to cooperate with the ODC in its investigation of Mr. Etheridge’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.
Count IX — The Wilkerson Matter
In August 2003, Jim Wilkerson hired respondent to handle a child custody matter. Mr. Wilkerson paid respondent $550. Thereafter, respondent neglected the matter and failed to communicate with Mr. Wilkerson.
*53 In December 2003, Mr. Wilkerson requested a refund and the return of his file, However, respondent failed to respond. Respondent also failed to cooperate with the ODC in its investigation of Mr. Wilkerson’s complaint.
|1(iThe ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, and 8.1(c) of the Rules of Professional Conduct.

Formal Charges

After investigation, the ODC filed formal charges against respondent. Respondent requested an extension of time to answer, which was granted. However, despite receiving this extension, respondent failed to file a timely answer. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

After considering the ODC’s submission and the deemed admitted facts, the hearing committee determined that the factual allegations as summarized in each count above were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee further determined that, according to case law, the baseline sanction is disbarment. The committee also found “multiple and substantial aggravating factors” and found no mitigating factors to be present.
Under these circumstances, the committee recommended that respondent be disbarred and that he be ordered to refund unearned fees, participate in the Louisiana Instate Bar Association’s fee arbitration program, or reimburse the Client Protection Fund where appropriate. The committee further recommended that respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

08-DB-055 & 05-DB-015

Disciplinary Board Recommendation

As noted earlier, the disciplinary board considered the hearing committee’s recommendations in 03-DB-055 and 05-DB-015 together. After reviewing these matters, the disciplinary board determined that the deemed admitted facts are not manifestly erroneous. Based on these facts, the board determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board determined that respondent knowingly violated duties owed to his clients and to the legal profession. It found his misconduct caused his clients harm by delaying resolution of their legal matters. In addition, the board explained that respondent harmed his clients by failing to refund their unearned fees, and noted one client, Mr. Annina, had his wages garnished because of respondent’s neglect. The board also found respondent repeatedly ignored the ODC’s efforts to contact him. Relying upon the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction, is disbarment.
The board found the following aggravating factors to be present: prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentional *54 ly failing to comply with rules or orders of the disciplinary agency, substantial experience in the practice of law (admitted | 1S1992), and indifference to making restitution. In mitigation, the board noted respondent’s personal and emotional problems due to the death of his child in October 2003, although it observed this loss would not have affected respondent’s conduct prior to October 2003.
Considering this court’s prior jurisprudence and the numerous clients who have been harmed by respondent, the board recommended that respondent be disbarred. The board further recommended that respondent be ordered to provide ac-countings to his clients and refund any unearned fees. Finally, the board recommended that respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597. So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, | ^additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The deemed admitted facts in this matter indicate that respondent neglected numerous legal matters, failed to communicate with numerous clients, failed to account for and refund unearned fees, engaged in conduct prejudicial to the administration of justice, and failed to cooperate with the ODC in numerous investigations. The record supports a finding that respondent violated the Rules of Professional Conduct as alleged in both sets of formal charges. Accordingly, having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The common thread running through the twenty-seven counts of misconduct in this matter is respondent’s complete and utter disregard for the welfare of his clients. In virtually every instance, respondent took fees from clients, per *55 formed little or no work on their cases, and refused to refund the unearned fees. He has refused to cooperate with the ODC’s investigations, and he has made no effort to participate in these disciplinary-proceedings, despite receiving several opportunities to present his evidence in mitigation. The baseline sanction for multiple instances of neglect, | ¡failure to refund unearned fees and failure to cooperate is disbarment. See, e.g., In re: Brancato, 06-0124 (La.5/26/06), 932 So.2d 651; In re: Laque, 03-3539 (La.6/25/04), 876 So.2d 753.
Numerous aggravating factors are present, including a history of prior disciplinary offenses,[3] a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. The sole mitigating factor is respondent’s personal or emotional problems during part of the time frame at issue.[4]
Considering the record as a whole, we conclude it clearly demonstrates respondent lacks the ethical qualities demanded of lawyers in Louisiana. His actions reveal he is a danger to the citizens of this state. Under these circumstances, he must be disbarred.
Accordingly, we will accept the board’s recommendation and disbar respondent. We will also order respondent to provide accountings to his clients and make restitution by refunding any unearned fees.
DECREE
|aiUpon review of the findings and recommendations of the hearing committees and the disciplinary board, and considering the record, it is ordered that Claud E. Phelps, Jr., Louisiana Bar Roll number 21811, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall provide accountings to his clients and make restitution by refunding any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The two sets of formal charges were never formally consolidated by order of the board.

. The day before the hearing, respondent filed an emergency motion to continue, claiming *51 that he was not served with notice of the hearing. The ODC informed the hearing committee chair that notice had been mailed to respondent at both his primary and secondary registration addresses. Therefore, the committee chair denied the continuance.

. We give particular weight to this factor. In In re: Phelps, 02-1837 (La.9/30/02), 827 So.2d 1140, we concluded respondent’s misconduct, which was similar to the instant misconduct, was the product of inexperience. In giving respondent a fully-deferred suspension, we sought to give him an opportunity to correct the problems which caused the misconduct. Through his failure to avail himself of this opportunity, respondent has convincingly demonstrated he lacks the fitness to practice law in this state.

. We recognize respondent suffered a personal loss in October 2003 when his son died. However, this mitigating factor is of limited impact under the instant facts because the majority of the misconduct occurred before this date. See, e.g., In re: Norris, 06-0671 (La.10/17/06), 939 So.2d 1221.