ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.*
This disciplinary proceeding arises from two counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edward Bissau Men-dy, an attorney licensed to practice law in the State of Louisiana.
UNDERLYING FACTS

Thibodeaux Matter

On July 12, 1993, Rome Thibodeaux and her siblings retained respondent to represent them in a malpractice action stemming from the death of their sister. Respondent filed a lawsuit on behalf of his clients, but that suit was dismissed on an exception of prematurity because the case had not been reviewed by a medical review panel. Thereafter, respondent took no further action on the matter. Moreover, respondent failed to adequately advise his clients of the status of their case at any time during the representation. After mi- *1226 merous unsuccessful attempts to contact respondent over a period of several years by telephone and visiting his office, Ms. Thibodeaux retained new counsel to pursue the case. Her new attorney forwarded two requests for information to respondent, but he failed to answer these requests.
UOn November 19, 1998, Ms. Thibo-deaux filed a complaint with the ODC. The ODC forwarded this complaint to respondent. After numerous requests, respondent sent a letter to the ODC, indicating that he had taken the case for Ms. Thibo-deaux because she was a personal friend. Respondent stated he was not experienced in medical malpractice and suggested his client seek other counsel, but she chose not to do so. He conceded that he should have done a better job of following up on the case.
Thereafter, respondent failed to comply with any further requests for information from the ODC. Although a subpoena was issued compelling his cooperation, he refused to appear for his scheduled deposition, as well as failed to produce the requested documents.

Magnolia Matter

In 1995 and 1996, Samuel Grant Williams, President and Chief Executive Officer of Magnolia Home Care, Inc. (“Magnolia”), retained respondent to review the status of Magnolia’s license with the Louisiana State Department of Health and Human Resources. While respondent initially pursued the matter, he failed to take any action after November 1, 1996. Despite repeated requests from his client, respondent did not provide him any information concerning the status of the matter. On April 10, 1999, over two and one-half years after his last action in the case, Mr. Williams finally spoke to respondent and requested that he return Magnolia’s files so they could be provided to Magnolia’s new counsel in the matter. Although respondent agreed, he later canceled then-scheduled meeting alleging the files were in storage.
On April 26, 1999, Mr. Williams filed a complaint with the ODC advising of respondent’s misconduct and seeking the return of Magnolia’s files. He further 13expressed concern that Magnolia’s licensing rights may have been jeopardized by respondent’s misconduct. Respondent failed to file a response to the complaint. Although a subpoena was issued ordering his cooperation, he faded to comply.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed two counts of formal charges against respondent in connection with the Thibodeaux and Magnolia matters. The charges alleged respondent’s actions violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (incompetence), 1.3 (neglect of a legal matter), 1.4 (failure to communicate), 3.2 (failure to expedite litigation), 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.
Respondent failed to file a timely answer. As a result, the matter was submitted on documentary evidence. In support of the charges, the ODC submitted deposition testimony from Ms. Thibodeaux and Mr. Williams. Respondent submitted no documentary evidence, but did submit an untimely written memorandum.[1]

*1227
Hearing Committee Recommendation

After reviewing the documentary evidence submitted by the ODC, the committee found the allegations in the formal charges were proven by clear and | ¿convincing evidence. The committee determined respondent knowingly, if not intentionally, violated duties owed to his clients, the public, the disciplinary system and to the profession. It further recognized respondent’s failure to cooperate in the disciplinary process diverted resources and impaired the system’s orderly functioning. The committee concluded that respondent’s victims were injured insofar as their cases were delayed, but that there was no definitive evidence in the record as to whether they permanently lost legal rights.
As aggravating factors, the committee recognized a pattern of misconduct, multiple offenses, vulnerability of the victims and bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency. In mitigation, it noted the absence of prior discipline and the absence of dishonest or selfish motive as mitigating factors.[2]
Considering the misconduct, together with the aggravating and mitigating factors, the committee found imposition of a six month suspension, followed by a six month period of probation, to be appropriate under the facts.

Disciplinary Board Recommendation

The disciplinary board adopted the findings of the hearing committee in all respects. It accepted the aggravating and mitigating factors cited by the committee, although it noted respondent’s belated involvement in the disciplinary process should be considered when weighing the aggravating factor of obstruction of the disciplinary process. It further considered remorse to be a mitigating factor, based on respondent’s post-hearing filing. The board adopted the recommendation of the Iscommittee that respondent be suspended for a period of six months, followed by a six month period of probation.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The factual findings of the committee demonstrate respondent incompetently handled his clients’ legal matters, neglected and failed to expedite their legal matters, failed to communicate with his clients and failed to cooperate in the investigation of the disciplinary proceedings. Therefore, the sole issue before us is the appropriate sanction for respondent’s misconduct.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate stan *1228 dards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Respondent’s actions potentially jeopardized his clients’ legal rights, and delayed resolution of their cases. Several aggravating factors are present, including multiple offenses and a pattern of misconduct. The only significant mitigating factor is respondent’s lack of a prior disciplinary record.
Considering the nature of the harm caused by respondent’s misconduct, as well as the aggravating and mitigating factors, we conclude a six month suspension from the practice of law, followed by a six month period of probation, is an appropriate sanction.
[fiDECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is the decision of this court that respondent, Edward Bissau 'Mendy, be suspended from the practice of law for a period o'f six months, followed by a six month period of probation. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.
TRAYLOR, J., dissents and would impose a harsher sanction.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in this deci-sión.

. With regard to the Thibodeaux matter, he admitted he was “somewhat derelict” in his duties as an attorney, but noted that he had little experience in the field and only took the case to help a friend. Respondent maintained he handled the case until he hit an "impasse” and, while his client may have lost time in the resolution of her case, it was not *1227 compromised in full. As to the Magnolia matter, respondent stated, after he conducted some work on the case, he advised Mr. Williams, his personal friend, that he would no longer pursue the matter. Contrary to Mr. Williams' deposition testimony, respondent alleged Mr. Williams neglected to subsequently pick up Magnolia’s files, although they were prepared for him. Finally, respondent stated he erred in failing to participate in the disciplinaiy process after he received Mr. Williams' complaint, but did so because he felt betrayed.

. Although the committee recognized that respondent seemed to acknowledge his misconduct, it declined to find remorse as a mitigating factor, noting respondent did not make a timely good faith effort to rectify the consequences of his misconduct.