PER CURIAM.*
h This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edward Bissau Mendy, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

09-DB-053

Count I — The Tucker Matter
In February 2003, Michelle Tucker retained respondent to prepare income tax returns and negotiate a settlement with the IRS on her behalf. She paid respondent $2,000 of a $5,000 flat fee, and agreed to pay the balance upon completion and processing of an offer in compromise. Respondent subsequently participated in a conference call with Ms. Tucker and the IRS; however, Ms. Tucker claimed that she was the one who ultimately settled the tax issue.[1]
*652 Ms. Tucker also retained respondent to prepare organizational documents for her limited liability company. Respondent agreed to handle the matter for a $1,000 flat fee and filed documents with the Secretary of State. However, according to Ms. Tucker, the documents were for a “simple LLC,” and respondent’s services were not worth more than $300.
|aIn January 2004, Ms. Tucker delivered a letter to respondent’s office terminating his representation. In the letter, she also requested her file and a full refund of the fees she paid, to no avail. In February 2004, Ms. Tucker filed a complaint against respondent with the ODC.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(5) (failure to refund an unearned fee), 1.15(d) (failure to timely remit funds to a client or third person), and 8.4(a) (violation of the Rules of Professional Conduct).
Count II — The Fuller Matter
In January 2004, Carrol and George Fuller hired respondent to represent them in a pending Chapter 13 bankruptcy proceeding. They paid respondent $500 and agreed to pay him an additional $1,000 at the completion of the bankruptcy.
Respondent subsequently determined that filing another Chapter 13 plan was the best option for his clients; however, he failed to file the petition as promised. In April 2004, the Fullers received notice that their mortgage company had begun the foreclosure process on their home and that a sheriffs sale was scheduled for June 2004. When Mrs. Fuller contacted respondent regarding the status of the case, he informed her that the bankruptcy petition had not been filed and that he could not assist them as the bankruptcy court had recently issued an order in another case enjoining him from practicing before the court.
Thereafter, the United States Trustee’s Office brought a motion to examine the fees and transactions regarding Mr. and Mrs. Fuller’s bankruptcy. During a hearing, respondent admitted that in June 2004, his secretary had assisted the Fullers in preparing a bankruptcy petition, schedules, and statements. In August 2004, the Fullers filed a complaint against respondent with the ODC.
|sThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.4(a), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count III — The Vaughn Matter
In November 2002, Woodrow Vaughn paid respondent’s firm a $3,000 fee to handle his wife’s succession. Under a separate contract, Mr. Vaughn paid respondent a $10,000 fee to handle a tax matter. Respondent agreed to provide a quarterly report regarding the status of the tax matter and any expenses incurred, which he failed to do. In April 2003, Mr. Vaughn contacted respondent to inquire about the status of his cases, at which time Mr. Vaughn learned his succession documents had been lost. Mr. Vaughn provided respondent with copies of the documents, but was required to post a bond to file the succession.
In May 2003, Mr. Vaughn delivered a letter to respondent’s office terminating his representation. In the letter, Mr. Vaughn requested an accounting and a return of his file and tax documents, to no avail. Respondent agreed to participate in *653 the Louisiana State Bar Association’s (LSBA) Fee Dispute Resolution Program regarding the fees charged to Mr. Vaughn, but he failed to appear for two scheduled hearings. In September 2004, Mr. Vaughn filed a complaint against respondent with the ODC. Three months later, the arbitrator rendered a $10,500 judgment against respondent. Respondent did not timely pay the judgment to Mr. Vaughn.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5(f)(5), 1.15(d), and 8.4(a).

1409-DB-073

The Mentor Matter

In April 2004, Pamela Mentor retained respondent to handle a foreclosure proceeding brought against her. Respondent advised Ms. Mentor that he would seek to arrest the proceeding, and in the alternative and/or in conjunction with the foreclosure, he would file a Chapter 13 bankruptcy to save her home from foreclosure. Ms. Mentor paid respondent $1,500 for the representation, which sum he told her would be refunded if he was unable to arrest the sale or obtain a bankruptcy stay of the foreclosure. However, respondent did not file a bankruptcy petition, and Ms. Mentor’s home was subsequently sold at a sheriffs sale. In May 2005, Ms. Mentor filed a complaint against respondent with the ODC.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3, 1.4, 8.4(a), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).
DISCIPLINARY PROCEEDINGS
In August 2009, the ODC filed the formal charges in 09-DB-053, and in December 2009, filed the formal charges in 09-DB-073. Respondent answered both sets of formal charges and admitted some of the factual allegations set forth therein, but denied any misconduct. The hearing committee chair then signed an order consolidating both sets of formal charges.

Hearing Committee Report

The consolidated matters proceeded to a hearing before the hearing committee. After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
Un the Tucker matter, the committee determined the ODC did not establish by clear and convincing evidence that the $2,000 fee Ms. Tucker incurred for the tax matter and the $1,000 fee incurred in connection with the limited liability company were unreasonable or excessive. However, respondent failed to return Ms. Tucker’s file and failed to hold disputed funds in trust, in violation of Rules 1.5(f)(5) and 1.15(d).
In the Fuller matter, the committee determined that after meeting with Mr. and Mrs. Fuller in January 2004 to discuss options available to prevent foreclosure of their home, respondent enrolled in March 2004 as counsel of record in their pending bankruptcy matter.[2] One month later, respondent was sanctioned by the bankruptcy court in an unrelated proceeding. Around the same time, Mrs. Fuller received notice that her home was in foreclosure and was scheduled to be sold at a sheriffs sale on June 15, 2004. She con *654 tacted respondent regarding the status of her case and was informed that the bankruptcy petition had not been filed and that respondent would not be able to represent her because the bankruptcy court had imposed sanctions against him. Because the Fullers were desperate, they pleaded with respondent’s secretary to help them prepare the filings to be submitted pro se. Respondent then allowed his secretary to help the Fullers prepare the necessary documents to file with the bankruptcy court. Respondent’s secretary also prepared an amendment correcting a deficiency in the initial filing.
The committee found that while it was unclear whether respondent intended to circumvent the bankruptcy court’s order enjoining him from practicing before the court or filing any pleadings, upon review of the transcript from the court’s sanction hearing, it seemed the “desperate circumstances” faced by the Fullers in June 2004 would not have existed had respondent timely taken appropriate action | Bwhen he was retained in January 2004. The bankruptcy court found deficiencies in both the filings prepared by respondent before he was suspended and in the filings prepared by his secretary after he was suspended. In acting as he did, the committee found respondent violated Rules 1.3 and 8.4(d).
In the Vaughn matter, the committee made factual findings consistent with the chronology of events set forth in the underlying facts section above and determined he violated Rules 1.3, 1.4, 1.5(f)(5), and 1.15(d).
In the Mentor matter, the committee found respondent filed a petition to enjoin the foreclosure of Ms. Mentor’s home. He was then contacted by the attorney for the lender, who indicated that, instead of going forward with the foreclosure, the bank would work with Ms. Mentor to reinstate the loan. Respondent forwarded the reinstatement information to Ms. Mentor on July 13, 2004, and he takes the position that the representation was completed at that time. However, Ms. Mentor apparently could not raise sufficient funds to reinstate the loan. Ultimately, foreclosure proceedings were reopened and in April 2005, Ms. Mentor’s house was seized and sold. The ODC takes the position that upon Ms. Mentor’s inability to reinstate the loan, respondent should have filed a bankruptcy petition on her behalf, or at the very least, should have notified her that the petition to enjoin the foreclosure of her home had been set for hearing.
The committee acknowledged that it seems likely respondent would have received notice of the hearing, and that he should have communicated with Ms. Mentor, if not actually appeared in court and/or taken some other action on her behalf. However, the committee determined that there is no evidence in the record that respondent actually received notice of the hearing or of the seizure and sale of the home. Therefore, the ODC did not establish by clear and convincing evidence that respondent failed to properly communicate with Ms. Mentor or failed to provide competent representation.
17Based on the testimony adduced at the hearing, including the demeanor of respondent and other witnesses, the committee concluded that, on the whole, respondent’s failures were negligent, and that he did not act with the intent to defraud or deceive. Respondent failed to make restitution to Mr. Vaughn for a period of over six years, even after the obligation had been reduced to judgment. The committee acknowledged respondent’s financial difficulties, including the loss of his office during Hurricane Katrina, but stated “it is fundamental to the nature of the profession that attorneys place the interests of their clients before their own.” Relying on the ABA’s *655 Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction is suspension from the practice of law.
The committee found the following aggravating factors are present: prior disciplinary offenses,[3] multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. The committee found the following mitigating factors are present: absence of a dishonest or selfish motive, personal or emotional problems, imposition of other penalties or sanctions, and remoteness of prior offenses.
Under these circumstances, the committee recommended respondent be suspended from the practice of law for one year and one day. The committee also recommended respondent be ordered to make full restitution to Mr. Vaughn, with interest.
The ODC filed an objection to the committee’s report and recommendation. With regard to the Mentor matter, the ODC objected to the committee’s finding that respondent properly communicated with his client and provided competent ^representation. The ODC also objected to the committee’s recommended sanction as too lenient. Respondent did not file an objection to the committee’s report and recommendation. However, in his brief to the disciplinary board, respondent alleged the committee committed various errors and argued that the sanction recommended by the committee is too harsh.

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings do not appear to be manifestly erroneous, with one minor exception. In addition, in the Vaughn matter, the board noted that after the formal hearing, respondent introduced into evidence a canceled check payable to Mr. Vaughn in the amount of $7,500. This amount, combined with the $3,000 in restitution respondent had already paid, covers the total sum owed to Mr. Vaughn.
The board determined respondent violated the Rules of Professional Conduct as follows:
In the Tucker matter, the board determined the committee properly concluded that respondent violated Rules 1.5 and 1.15. Having violated these rules, the board determined respondent also violated Rule 8.4(a).
In the Fuller matter, the board determined the committee properly concluded that respondent violated Rules 1.3 and 8.4(d). Respondent also violated Rule 1.4 when he failed to keep the Fullers reasonably informed about the status of their second bankruptcy matter, his suspension from practice during the pendency of the bankruptcy proceeding, and the problems associated with the third bankruptcy petition filed on their behalf. Having violated these rules, the board determined respondent also violated Rule 8.4(a).
In the Vaughn matter, the board determined the committee properly concluded that respondent violated Rules 1.3,1.5, and 1.15. Having violated these |9rules, the *656 board determined respondent also violated Rule 8.4(a). However, the board concluded the ODC did not prove respondent violated Rule 1.4, as Mr. Vaughn testified that during the representation, he had a number of meetings with respondent, spoke with him by phone, and communicated with him via email.
In the Mentor matter, the board cited respondent’s failure to conduct any negotiations on Ms. Mentor’s behalf regarding a settlement and failure to appear in court for the scheduled hearing dates concerning the injunction. As a result of these failures, the foreclosure action proceeded against Ms. Mentor. Respondent also failed to file a bankruptcy petition on Ms. Mentor’s behalf to stop the foreclosure proceedings, which he agreed to do. Although respondent claimed he was hired only to obtain the preliminary junction, the board rejected this argument given the terms of his engagement.[4] As to this misconduct, the board concluded respondent violated Rules 1.1, 1.3, 1.4, and 8.4(a). However, the board concluded the ODC did not prove respondent violated Rule 8.4(c), as the record shows respondent simply did not provide competent representation.
The board determined respondent violated duties owed to his clients, the profession, and the legal system. While his conduct in some instances was negligent, in other matters, his conduct was knowing and intentional. His misconduct in the Mentor matter resulted in significant actual harm, as Ms. Mentor lost her home. In the remaining matters, the potential for significant injury was | mgr eat and respondent’s clients were forced to find others to assist them in their respective matters. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is suspension.
The board found the following aggravating factors are present: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and “initial” indifference to making restitution. The board found the following mitigating factors are present: personal or emotional problems and the imposition of other penalties or sanctions.
Based on this court’s jurisprudence, the board recommended respondent be suspended from the practice of law for three years. The board also recommended respondent be ordered to participate in the LSBA’s Lawyer Fee Dispute Resolution Program to determine if restitution is owed to Ms. Tucker or to the Client Assistance Fund for payments made to Ms. Mentor. Due to the lengthy period of time it took respondent to make restitution to Mr. Vaughn, the board also recommended respondent pay interest on the amounts due to Mr. Vaughn from December 2004 to August 2010.
*657 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent re-view of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held |nthe manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record in this matter supports the hearing committee’s findings of fact, as modified by the disciplinary board. Essentially, respondent neglected legal matters, failed to communicate with clients, failed to account for or refund unearned fees, and failed to return his clients’ files.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent violated duties owed to his clients, the profession, and the legal system. His misconduct resulted in serious actual harm in the Mentor matter and created the potential for significant injury in the remaining matters. The baseline sanction for respondent’s misconduct is suspension from the practice of law.
The following aggravating factors are present: prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The following mitigating factors are present: personal or emotional problems and the imposition of other penalties or sanctions.
Turning to the issue of an appropriate sanction, we note that in In re: Brown, 04-1119 (La.1/14/05), 892 So.2d 1, the attorney neglected the legal matters of 112five clients, failed to communicate with his clients, failed to return unearned legal fees owed to two clients, failed to safeguard one client’s property, and failed to cooperate with the ODC, causing actual injury to his clients. Considering this misconduct, we found that Mr. Brown “demonstrated in a convincing fashion that he has no regard for the welfare of his clients or for his professional obligations” and imposed a three-year suspension from the practice of law.
Under the circumstances, we agree that a three-year suspension, as suggested by the disciplinary board, is an appropriate sanction for respondent’s misconduct. Accordingly, we will adopt the disciplinary board’s recommendation. We will also order respondent to make full restitution to his clients, or to the bar association’s Client Assistance Fund, as applicable.
DECREE
Upon review of the findings and recommendations of the hearing committee and *658-690 disciplinary board, and considering the record, it is ordered that Edward Bissau Mendy, Louisiana Bar Roll number 22117, be and he hereby is suspended from the practice of law for three years. It is further ordered that respondent make full restitution to each of his clients subject of the formal charges, or to the Louisiana State Bar Association’s Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. According to Ms. Tucker, she was on the telephone for over an hour articulating the *652 problem to the IRS while respondent mostly listened.

. The Fullers had already filed a Chapter 13 plan which remained active; however, they had fallen behind in their mortgage payments, and thus they were concerned about the foreclosure issue.

. In 2001, this court considered a proceeding involving two counts of formal charges against respondent for. misconduct which occurred between 1993 and 1999. These charges alleged that respondent incompetently handled his clients' legal matters, neglected and failed to expedite legal matters, failed to communicate with clients, and failed to cooperate in the disciplinary proceedings. After considering the record, we suspended respondent from the practice of law for six months, followed by a six-month period of probation. In re: Mendy, 01-1462 (La.8/31/01), 793 So.2d 1225.

. The board focused on the following language in the retainer agreement signed by Ms. Mentor:
We represent you in the foreclosure matter brought against you by Countrywide Home Loans Servicing and to [sic] seek to arrest the foreclosure proceeding broungh [sic] against you. Alternative and/or in conjunction with the above, we also agree to pursue file [sic] a Chapter 13 Bankruptcy proceeding to assure you [sic] protection and save your house from the foreclosure proceeding.
[[Image here]]
In connection with our efforts, we will conduct all negotiations for settlement purposes, and will perform any tasks that are necessary including conduct [sic] discovery, prepare [sic] for conferences, and conduct [sic] appeal.